**Case No. 25-40519**

---

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

JOSEPH LOWRY,

       Plaintiff-Appellant,

  v.

CITY OF LA MARQUE, TEXAS; KEITH BELL IN HIS INDIVIDUAL CAPACITY AND IN HIS OFFICIAL CAPACITY; KIMBERLEY YANCY IN HER INDIVIDUAL CAPACITY AND IN HER OFFICIAL CAPACITY; RANDALL ARAGON, IN HIS INDIVIDUAL AND IN HIS OFFICIAL CAPACITY,

       Defendants-Appellees.

---

On Appeal from United States District Court
for the Southern District of Texas-Galveston Division
Civil Action No. 3:22-cv-00112

---

BRIEF OF APPELLEES

---

Steven D. Selbe
Gordon Rees Scully Mansukhani, LLP
1900 West Loop South, Suite 1000
Houston, Texas 77027
Telephone: (713) 961-3366
sselbe@grsm.com

*Attorney for Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Plaintiff-Appellant Joseph Lowry**

2. Curt Christopher Hesse, Counsel for Appellant

3. Melissa Moore, Counsel for Appellant

4. Moore & Associates, Counsel for Appellant

5. **Defendant-Appellee City of La Marque, Texas**

6. **Defendant-Appellee Keith Bell**

7. **Defendant-Appellee Kimberley Yancy**

8. **Defendant-Appellee Randall Aragon**

9. Steven D. Selbe, Counsel for Appellees

10. Gordon Rees Scully Mansukhani LLP, Counsel for Appellees

/s/ *STEVEN D. SELBE*
Steven D. Selbe

ii

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................ii

TABLE OF AUTHORITIES...........................................................................v

STATEMENT REGARDING ORAL ARGUMENT.................................................1

JURISDICTIONAL STATEMENT ..................................................................2

STATEMENT OF THE ISSUES ON APPEAL ...................................................2

STATEMENT OF CASE...............................................................................3

    Procedural History and Disposition Below......................................3

    Background Facts.............................................................................6

SUMMARY OF ARGUMENT .......................................................................10

ARGUMENTS AND AUTHORITIES...............................................................11

    I.    Standard of Review ..............................................................11

    II.    Issues.................................................................................15

        Issue 1:    The district court was correct in concluding that the defamation claims against Yancy and Aragon should have been dismissed pursuant to Rule 12(c). ......................................15

        Issue 2:    The district court was correct in concluding that Plaintiff failed to state a plausible claim for First Amendment retaliation based on "name calling." ......................................19

        Issue 3:    Plaintiff failed to overcome the Individual Defendants' entitlement to qualified immunity.............................................................21

Plaintiff Failed to Create a Fact Issue on the First Prong of Qualified Immunity ..............23

Plaintiff Utterly Failed to Satisfy the Second Prong of Qualified Immunity .................26

Issue 4:    Plaintiff abandoned his municipal liability claim by not addressing it in his response to the City's motion for summary judgment...........29

Issue 5:    The district court was correct in concluding that the City of La Marque established its entitlement to summary judgment as a matter of law. .....................................................30

Issue 6:    The district court correctly denied Plaintiff's motion for reconsideration and the "law of the case" argument presents no issue for appeal......33

CONCLUSION .......................................................................................38

CERTIFICATE OF SERVICE ........................................................39

CERTIFICATE OF COMPLIANCE ...............................................39

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alderson v. Concordia Par. Corr. Facility,*
848 F.3d 415 (5th Cir. 2017)...........................................................24

*Anderson v. Liberty Lobby, Inc.,*
47 U.S. 242 (1986)..........................................................................12

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011).................................................................. 20, 21

*Bazan v. Hidalgo County,*
246 F.3d 481 (5th Cir. 2001).........................................................14

*Benfield v. Magee,*
945 F.3d 333 (5th Cir. 2019)..........................................................27

*Biden v. Knight First Amend. Inst. At Columbia Univ.,*
141 S. Ct. 1220 (2021)....................................................................27

*Black v. Panola Sch. Dist.,*
461 F.3d 584 (5th Cir. 2006)..........................................................29

*Board of County Comm'rs of Bryan County v. Brown,*
520 U.S. 397 (1997)........................................................................30

*Brosseau v. Haugen,*
543 U.S. 194 (2004) (per curiam)............................................. 21, 25

*Buehler v City of Austin,*
824 F.3d 548..................................................................................27

*Bush v. Strain,*
513 F.3d 492 (5th Cir. 2008)..........................................................21

*Cantu v. Rocha,*
77 F.3d 795 (5th Cir. 1996)............................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................12

*City of Lancaster v. Chambers*,
   883 S.W.2d 650 (Tex. 1994) ...................................................17

*Collier v. Montgomery*,
   569 F.3d 214 (5th Cir. 2009)..................................................14

*Colson v. Grohman*,
   174 F.3d 498 (5th Cir. 1999)........................................... 18, 19

*Faciane v. Sun Life Assurance Co. of Canada*,
   931 F.3d 412 (5th Cir. 2019)..................................................33

*Fairchild v. Liberty Indep. Sch. Dist.*,
   597 F.3d 747 (5th Cir. 2010)..................................................32

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994)..................................................35

*Garza v. Harrison*,
   574 S.W.3d 389 (Tex. 2019). ........................................... 16, 17

*Gates v. Texas Dep't of Protective and Regulatory Servs.*,
   537 F.3d 404 (5th Cir. 2008)..................................................13

*Hargrave v. Fibreboard Corp.*,
   710 F.2d 1154 (5th Cir. 1983).................................................29

*Houston Community College System v. Wilson*,
   142 S.Ct. 1253 (2022)............................................................19

*Hunter v. Bryant*,
   502 U.S. 224 (1991)................................................................13

*Jacobs v. Nat'l Drug Intelligence Ctr.*,
   548 F.3d 375 (5th Cir. 2008)..................................................27

*James v. Harris County*,
   577 F.3d 612 (5th Cir. 2009)..................................................30

*Johnson v. Johnson,*
  385 F.3d 503 (5th Cir. 2004) ......................................................... 10, 11

*JTB Tools & Oilfield Servs., L.L.C. v. U.S.,*
  831 F.3d 579 (5th Cir. 2016) ............................................................. 15

*Khansari v. City of Houston,*
  14 F.Supp.3d 842 (S.D. Tex. 2014) .................................................. 24

*Kisela v. Hughes,*
  584 U.S. 100, 138 S.Ct. at 1162 (2018) ........................................... 22

*Knight First Amdt. Inst. at Columbia Univ. v. Trump,*
  928 F.3d 226 (2019) ........................................................................... 27

*Krim v. BancTexas Group, Inc.,*
  989 F.2d 1435 (5th Cir. 1993) ..................................................... 12, 35

*Laverie v. Wetherbe,*
  517 S.W.3d 748 (Tex. 2017) ......................................................... 16, 17

*Leverette v. Louisville Ladder Co.,*
  183 F.3d 339 (5th Cir. 1999) (per curiam) ...................................... 34

*Lincoln Gen. Ins. Co. v. De La Luz Garcia,*
  501 F.3d 436 (5th Cir. 2007) ............................................................. 34

*Lincoln v. Scott,*
  887 F.3d 190 (5th Cir. 2018) ............................................................. 26

*Malley v. Briggs,*
  475 U.S. 335 (1986) ..................................................................... 13, 22

*Matherne v. Larpenter,*
  216 F.3d 1079 (5th Cir. 2000) ..................................................... 18, 19

*Melton v. Farrow,*
  No. 03-13-00542-CV, 2015 Tex. App. LEXIS 1224, 2015
  WL 681491 (Tex. App.-Austin Feb. 10, 2015, pet. denied) ................ 17

*Mercury Air Group, Inc. v. Mansour,*
  237 F.3d 542 (5th Cir. 2001) ............................................................. 11

*Michalik v. Hermann,*
  422 F.3d 252 (5th Cir. 2005) ................................................................. 14

*Monroe v. Houston Indep. Sch. Dist.,*
  No. CV H-19-1991, 2019 WL 13252407 (S.D. Tex. 2019) ................... 32

*Morgan v. Swanson,*
  659 F.3d 359 (5th Cir. 2011) (en banc) .............................................. 27

*Morrow v. Meachum,*
  917 F.3d 870 (5th Cir. 2019) .................................................. 13, 20, 22

*Mullenix v. Luna,*
  577 U.S. 7 (2015) ............................................................................ 13, 21

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................ 13, 20

*Pierce v. Texas Dep't. of Criminal Justice, Inst. Div.,*
  37 F.3d 1146 (5th Cir.1994) ................................................................. 19

*Piotrowski v. City of Houston,*
  237 F.3d 567 (5th Cir. 2001) ............................................................... 31

*Ramirez v. Guadarrama,*
  3 F.4th 129 (5th Cir. 2021) ................................................................. 13

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ............................................................................. 31

*Robinson v. Hunt County.,*
  921 F.3d 440 (5th Cir. 2019) ............................................................... 31

*Robinson v. J&K Admin. Mgmt. Servs.,*
  817 F.3d 193 (5th Cir. 2016) ............................................................... 27

*Saucier v. Katz,*
  533 U.S. 194 (2001) ............................................................................. 21

*Schiller v. Physicians Res. Grp., Inc.,*
  342 F.3d 563 (5th Cir. 2003) ............................................................... 33

*Scott v. Harris,*
   550 U.S. 372 (2007)................................................................12

*Simon v. United States,*
   891 F.2d 1154 (5th Cir. 1990)...........................................33

*Slegelmilch v. Pearl River Cnty. Hosp. & Nursing Home,*
   655 F. App'x 235 (5th Cir. 2016)......................................19

*Smith ex rel. Estate of Smith v. United States,*
   391 F.3d 621 (5th Cir. 2004)..............................................36

*Templet v. HydroChem Inc.,*
   367 F.3d 473 (5th Cir. 2004)..............................................33

*Thomas v. Collins,*
   323 U.S. 516 (1945) (Jackson, J., concurring)...................20

*U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.,*
   761 F.3d 409 (5th Cir. 2014)..............................................34

*U.S. ex rel. Farmer v. City of Houston,*
   523 F.3d 333 (5th Cir. 2008)..............................................35

*Wesby v. District of Columbia,*
   816 F.3d 96 (D.C. Cir. 2016), *rev'd,* 538 U.S. 48 (2018).....................22

*Whatley v. Philo,*
   817 F.2d 19 (5th Cir. 1987)................................................14

## Constitutions

U.S. Const. amend. I ................................................................ passim

## Statutes

28 U.S.C. § 1291 .......................................................................2

28 U.S.C. § 1331 .......................................................................2

42 U.S.C. § 1983 ...................................................... 2, 20, 24, 30

Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5) ...................17

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) .......................... 16, 17, 18

**Rules**

Fed. R. App. P. 28(a)(8) ..................................................................15

Fed. R. App. P. 28(a)(8)(A) ...........................................................15

Fed. R. Civ. P. 12(b)(6) ..................................................................11

Fed. R. Civ. P. 12(c) ............................................................ 2, 10, 11, 15

Fed. R. Civ. P. 56...................................................................... 12, 35

Fed. R. Civ. P. 56(c) .......................................................................11

Fed. R. Civ. P. 59(e).......................................................................33

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellees, the City of La Marque, Keith Bell, Kimberley Yancy and Randall Aragon, request the opportunity to present oral argument in this matter. The issues presented are somewhat unique and oral argument may assist the Court in analyzing the valid reasons for the dismissal of all of Plaintiff's claims against these appellees.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction of this case pursuant to 28 U.S.C. §1331 because Plaintiff's causes of action against the Defendants were based on 42 U.S.C. §1983 and the alleged claims arose under the "Constitution and laws of the United States." Appellate jurisdiction is based on 28 U.S.C. §1291 in that the district court dismissed all of Plaintiff's claims and entered a final judgment. ROA.968

## STATEMENT OF THE ISSUES ON APPEAL

1. The district court was correct in concluding that the defamation claims against Yancy and Aragon should have been dismissed pursuant to Rule 12(c).

2. The district court correctly concluded that Plaintiff failed to state a plausible claim for First Amendment retaliation based on "name calling."

3. Plaintiff failed to overcome the Individual Defendants' entitlement to qualified immunity.

4. Plaintiff abandoned his *Monell* claims against the City of La Marque by failing to even mention municipal liability against the City in his response to the City's motion for summary judgment.

5. The district court was correct in concluding that the City of La Marque established its entitlement to summary judgment as a matter of law.

6. The district court correctly denied Plaintiff's motion for reconsideration and the "law of the case" argument presents no issue for appeal.

## STATEMENT OF CASE

### Procedural History and Disposition Below

Plaintiff filed this suit against the City of La Marque, Mayor Keith Bell, City Councilwoman Kimberley Yancy and Police Chief Randall Aragon on April 11, 2022. ROA.9-31. After an initial motion to dismiss, Plaintiff eventually amended the complaint three times, filing a third amended complaint on March 15, 2023. ROA.239-268.

Defendants filed a Rule 12(c) motion for judgment on the pleadings on April 14, 2023. ROA.275-322. Plaintiff filed a response. ROA.330-341. Defendants replied on May 26, 2023. ROA.347-352. Judge Brown granted the motion in part and denied it in part on January 25, 2024. ROA.353-369. Plaintiff's claims that "name calling" amounted to a constitutional violation and his state law defamation claims against Yancy and Aragon were dismissed. ROA.364-65 and 366-68.

Defendants filed an answer in which the individual defendants affirmatively pleaded qualified immunity. ROA.383-390. Subsequently the Parties agreed to proceed before Magistrate Judge Andrew Edison. ROA.376.

On November 1, 2024, Bell, Yancy and Aragon filed a comprehensive motion for summary judgment that included five

3

declarations and multiple exhibits. ROA.391-485. The City also filed a comprehensive motion for summary judgment on the same day. ROA.486-578.

Plaintiff filed an almost whimsical response to the motions for summary judgment on December 27, 2024 that included only four pages that could realistically be called legal argument. ROA.585-596. Plaintiff attached one declaration (his own), no relevant deposition testimony and no discovery responses because he did not take any depositions and did not send discovery to the Defendants. The response declaration was a rambling manifesto that was full of conclusory statements and included exhibits with no context and no relevance. Certainly, most of the exhibits had nothing to do with any of the issues in the lawsuit.[1]

Plaintiff's response ignored Defendants' proof, arguments, affirmative defenses and standards for summary judgment and asked the district court to "exercise its negative discretion" and deny the motions because of policy considerations. ROA.592. In the entirety of the

---

[1] At least 10 of the exhibits had to do with the hiring and qualifications of the chief of police.

response, Plaintiff literally never mentioned "qualified immunity" or "municipal liability" a single time. *See*, ROA.585-595.

Plaintiff literally threw a whole bunch of stuff against the wall, and asked the district court to sift through it and in two and a half pages of non-specific argument, asked the Court to find that a fact question existed somewhere in the manifesto.

Appellee filed a consolidated reply to Plaintiff's response on January 20, 2025. ROA.882-895. On April 24, 2025, Magistrate Judge Andrew Edison granted the motions in their entirety, concluding that Plaintiff failed to overcome the Individual Defendants entitlement to qualified immunity and that Plaintiff had abandoned his *Monell* claims and even if he had not, the City was entitled to judgment as a matter of law. ROA.961-962 and ROA.962-964. A final judgment was entered based on the opinion and order. ROA.968.

On May 22, 2025, Plaintiff filed a motion and an amended motion for reconsideration. ROA.988-1007. Defendants responded on June 12, 2025. ROA.1008-1019. Plaintiff's motion was denied by Judge Edison. ROA.1020. Plaintiff then timely filed a notice of appeal. ROA.1032.

## Background Facts

Appellant, Joseph Lowry ("Plaintiff"), a purported community activist, who the last time he litigated a case in Galveston County had a peace bond entered for threatening violence against one of the litigants[2], sued the City of La Marque, Mayor Keith Bell, Councilwoman Kimberley Yancy and Police Chief Randall Aragon (Bell, Yancy and Aragon will from time to time be referred to collectively as the "Individual Defendants") for a variety of perceived slights. Chief among the complaints was being "banned" from the City's Facebook pages and having some number of his hundreds of campaign signs removed. In the end, he could provide no details, no context, no personal involvement of the Individual Defendants and no facts that would establish municipal liability. as so deficient it failed to even include the words "qualified immunity" or "municipal liability." ROA.585-596. Not surprisingly, the motions were granted. ROA.960-967.

Plaintiff alleged in the live Complaint that the City and individual Defendants violated his constitutional rights, in part, because he was "banned" from the La Marque Facebook page. ROA.239-268. (Count One

---

[2] ROA.292-296.

and Count Two). However, Plaintiff's allegations of being "banned" from La Marque social media were blatantly contradicted by content contained in La Marque's limited public forum Facebook pages. In fact, Plaintiff "Joseph Lowry," regularly and frequently, posted on the Facebook page hundreds of times both before and after this lawsuit was filed, and even after the complaint was amended the third time.  ROA.438-451. Attached to the Declarations of Keith Bell and Kimberley Yancy as exhibits were a non-exhaustive series of screen shots from the La Marque Facebook page both pre-lawsuit, post-lawsuit and post amended complaints. ROA.438-451.

Plaintiff filed his Original Complaint on April 11, 2022, claiming he was "banned" from commenting on the City's Facebook page. However, on March 23, 2022, he commented on a post and stated "Keith Bell and Kimberly Yancy's harassment of our children are why we removed them from public school…." On March 30, he replied to a post and stated "Stop fighting us with our tax dollars. It's theft." In reply to a post on April 4 (a week before the lawsuit was filed claiming he was banned) "BELL AND ARAGON ARE THUGS AND CRIMINALS." (all caps in original

comment). Certainly an interesting and emphatic take about the very individuals he sued from someone "banned" from commenting.

The pre-lawsuit comments were far from the last. Lowry commented on posts that were made on April 19, April 25, May 6 ("More lies and spin from a corrupt mayor….") and May 10 ("highest crime and a crooked police chief mayor and councilwoman…."). In *blatant contradiction* of his allegations, Plaintiff commented on nearly every post made in late March through May of 2022. His critical comments are still teeming throughout the site. He called the City management "clowns," "corrupt" and accused Councilwoman Yancy of being "racist." Those comments are "up" and accessible to anyone. ROA.438-451.

Commenting on an upcoming recall election of Mayor Bell (which ultimately was unsuccessful), Lowry commented on an October 11, 2022 post stating about Bell and why the recall should succeed, *"…racist lying scammer con artist thug criminal."* (lack of punctuation in original). [ROA.438-451].

Fittingly and somewhat ironically, on the very day the Defendants filed their motions for summary judgment, the City posted an announcement about the scheduling of Council meetings and "Lowry

News Network" (a/k/a Joseph Lowry) commented "Mayor Bell for Prison!"

https://www.facebook.com/cityoflamarque

The social media sites of the City were created as limited public forums with specific, content neutral terms and conditions that are prominently displayed. The sites are also subject to Facebook's terms of service. They were created with the help of attorneys and other municipal organizations who were creating similar sites. ROA.454-455 and 459.

The limited public forum Facebook page of the City has a set of "terms of service." ROA.468. Defendants Aragon, Bell and Yancy played no part in monitoring or administering the terms. ROA.409-410, 433, 470.

The Individual Defendants all testified that they had no involvement with the Facebook page creation, page rules or its administration; They had not removed any posts of Plaintiff from any social media site of the City; They did not ban Plaintiff from any social media site nor had they instructed anyone to do so. ROA.409-10, 433 and 470.

The City did not treat political signs differently based on the content of those signs. However, there are certain content neutral regulations set

forth by the State of Texas and incorporated into the La Marque Code of ordinances that the City did enforce. ROA.454. The City's Code Enforcement Department was authorized to enforce the City's Code of Ordinances but only in a content neutral fashion. ROA.454.

Plaintiff failed to controvert a single sentence of the testimony of the Individual Defendants as he took no depositions and sent no discovery.

### SUMMARY OF ARGUMENT

Ultimately, Plaintiff's case was doomed by the facts of this case (or lack thereof) and a disastrous response to the motions for summary judgment supported only by a declaration that appeared to be more of a conspiracy manifesto than a serious legal document. Plaintiff's response was so deficient it failed to even use the words "qualified immunity" or "municipal liability" and failed to make one cogent argument as to why qualified immunity should not apply or that municipal liability should be imposed.

The Individual Defendants supplied uncontroverted testimony that they had no involvement with the Facebook page creation, page rules or its administration, they had not removed any posts of Plaintiff from any

social media site of the City nor did they instruct anyone to do so, they did not ban Plaintiff from any social medica site and nor did they request anyone to do so. Plaintiff did not controvert a single sentence of that testimony. They were clearly entitled to qualified immunity when Plaintiff failed to make a single argument to the contrary.

Plaintiff abandoned his *Monell* claims against the City by failing to even mention "municipal liability" in the body of his response or making one argument as to why the City should be liable. Even if the claim was not abandoned, the summary judgment evidence of the City was sufficient to establish its entitlement to judgment as a matter of law.

## ARGUMENTS AND AUTHORITIES

### I.    Standard of Review

The Fifth Circuit reviews a district court's denial of a Rule 12(c) motion for judgment on the pleadings de novo. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Id.* In reviewing the denial of Rule 12(c) motions on immunity grounds, this Court reviews the sufficiency of the pleadings, accepting the allegations of the complaint as true and viewing them in the light most favorable to the plaintiff. *Johnson*, 385 F.3d at 529.

Further, this Court also reviews summary judgment de novo. *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 546 (5th Cir. 2001). In order for the grant of summary judgment to be appropriate, the pleadings, depositions, answers to interrogatories, and admissions of file, together with any affidavits, must demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* In performing this analysis, the reviewing court looks at the available evidence in the light most favorable to the nonmoving party. *Id*; see also FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, which the party believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Once the movant carries the burden set forth under *Celotex*, the burden shifts to the non-movant to show that summary judgment should not be granted. FED. R. CIV. P. 56. The party opposing a properly supported motion for summary judgment may not rest on mere

allegations or a denial of pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 256-257 (1986). Unsubstantiated assertions that a fact issue exists will not suffice. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993).

As stated by the Supreme Court, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Moreover, a court should not rely "…on such visible fiction…" when a video contradicts a plaintiff's allegations. Id. at 381-82.

The doctrine of qualified immunity is an immunity from suit, not a mere defense to liability. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). A qualified immunity inquiry has two prongs: (1) whether the officials' conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The court may exercise discretion in deciding which of the two prongs should be addressed first

13

in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Morrow*, 917 F.3d at 874 (the court "can decide one question or both."). A constitutional right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). Although qualified immunity is called an affirmative defense, the defendant asserting qualified immunity does not have the burden to establish it. Rather, it is the plaintiff whose burden it is to negate the assertion of qualified immunity, once it is raised. *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established

14

law. See *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing

*Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)).

The plaintiff, bearing the burden of negating the defense, cannot

rest on conclusory allegations and assertions, but must demonstrate

genuine issues of material fact regarding the reasonableness of the

official's conduct. *Id*. In other words, a plaintiff must satisfy his burden

by negating immunity by specifically identifying evidence that rebuts the

defendants' presumed entitlement to dismissal based upon qualified

immunity. *Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir. 1987).

## II.    Issues

**Issue 1: The district court was correct in concluding that the defamation claims against Yancy and Aragon should have been dismissed pursuant to Rule 12(c).**

Plaintiff appeals the district court's granting of the motion to

dismiss the defamation claims. However, he then cites exactly zero Texas

cases that support his position. [Appellant's Brief, 15-16]. Rule

28(a)(8)(A) of the Federal Rules of Appellate Procedure requires the

argument section of an appellant's brief to contain not only the party's

contentions, but also its "reasons for them, with citations to the

authorities and parts of the record on which appellant relies." FED. R.

APP. P. 28 (a)(8)(A). Where a brief wholly fails to comply with Rule

15

28(a)(8), an appellate court may decline to reach the merits of appellant's claims. *JTB Tools & Oilfield Servs., L.L.C. v. U.S.*, 831 F.3d 579, 601 (5th Cir. 2016). Plaintiff here failed to meet that standard with regard to the defamation claim.

Even if Appellant's Brief is deemed to be sufficient with regard to defamation, it is clear the claims should were properly dismissed under the Texas Tort Claims Act.

Defamation is a state law cause of action. *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996). The Texas Tort Claims Act contains an election of remedies provision which in relevant part provides:

*If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.*

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).

"By adopting section 101.106(f), the Legislature has effectively mandated that only a governmental unit can be sued for a governmental employee's work-related tortious conduct." *Garza v. Harrison, 574 S.W.3d 389, 393-94 (Tex. 2019).* Thus, before filing suit a plaintiff must

decide "whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Laverie v. Wetherbe, 517 S.W.3d 748, 752 (Tex. 2017)*. The Legislature did not purpose section 101.106(f) "to adjudicate the underlying tort claim but to quickly dismiss government employees when the suit should be brought against their employer." *Laverie*, 517 S.W.3d at 755.

Under the TTCA "'scope of employment' means the performance for a governmental unit of the duties of an employee's office or employment and includes *being in or about the performance of a task lawfully assigned to an employee by competent authority*." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5) (emphasis added). "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994); *see Garza v. Harrison*, 574 S.W.3d 389, 401 ("Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing [her] job at the time of the alleged tort").

The scope-of-employment inquiry under section 101.106(f) is not concerned with the reasons motivating the complained-of conduct but

17

whether the conduct fell within the general scope of the employee's employment. *Melton v. Farrow,* No. 03-13-00542-CV, 2015 Tex. App. LEXIS 1224, 2015 WL 681491, at *8 (Tex. App.—Austin Feb. 10, 2015, pet. denied) (mem. op.); *Laverie,* 517 S.W.3d at 755 ("An employee will of course sometimes have personal motives for performing her job a particular way, and a statement made or an act done may simultaneously fulfill a job responsibility while furthering an ulterior motive"). It is fundamentally objective; that is, whether the employee's job duties and the alleged tortious act are *connected. Garza,* 574 S.W.3d at 401 (emphasis added) (citing *Laverie,* 517 S.W.3d at 753).

Here, Plaintiff alleged throughout the Amended Complaint, that Aragon is the La Marque police chief and Yancy is a City councilwoman. He then alleges that the alleged defamatory comments were made during "a city council meeting." Those facts alone, mean that the comments were at the very least *connected* to the officials' job duties. As such, the district court was absolutely correct in granting the motion to dismiss pursuant to Section 101.106(f) the Texas Tort Claims Act and Plaintiff's "it's not fair" argument, without a citation to a single Texas case, fails.

18

**Issue 2: The district court was correct in concluding that Plaintiff failed to state a plausible claim for First Amendment retaliation based on "name calling."**

The Fifth Circuit has held that "criticism, an investigation (or an attempt to start one), and false accusations [are] all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999). Applying *Colson* to a private citizen retaliation claim under the First Amendment, the court explained "that retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983." *Matherne v. Larpenter*, 216 F.3d 1079,  (5th Cir. 2000) (quoting *Colson*, 174 F.3d at 513); *see also Slegelmilch v. Pearl River Cnty. Hosp. & Nursing Home*, 655 F. App'x 235, 239–40 (5th Cir. 2016); *See also, Houston Community College System v. Wilson*, 142 S.Ct. 1253 (2022) (public resolution that officially censured trustee for "reprehensible" conduct was not a materially adverse action that could raise a First Amendment retaliation claim).

A plaintiff must cross a certain threshold of harm before she can bring a claim for First Amendment retaliation. *Colson*, at 513 n. 8.

19

Significant adverse actions such as arrests or indictments may constitute actionable First Amendment violations. *See Id.* at 511. However "recent case law unequivocally hold[s] that retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983." *Id.* at 513, *see also Pierce v. Texas Dep't. of Criminal Justice, Inst. Div.,* 37 F.3d 1146, 1150 (5th Cir.1994); *Matherne,* 216 F.3d at 1079.

In the present case, there is *no* official adverse action nor is there *any* tangible or materially adverse action that has been taken by the City that Plaintiff proved. He was never arrested or indicted. ROA.409. Plaintiff "bravely" calls City officials "thugs," "corrupt," "lying" and "racist" and is disappointed when inexplicably he is not hailed as a hero by the City. However, the First Amendment permits "[f]ree speech on both sides and for every faction on any side." *Thomas v. Collins*, 323 U.S. 516, 547, (1945) (Jackson, J., concurring). Plaintiff is not constitutionally entitled to sole possession of the bullhorn. His disappointment at the reaction of the City to his rantings is of no constitutional moment.

**Issue 3: Plaintiff failed to overcome the Individual Defendants' entitlement to qualified immunity.**

Qualified immunity includes two inquiries. The first question is whether the official violated a constitutional right. The second question is whether the "right at issue was 'clearly established' at the time of [the] alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts can decide one question or both and can start with either question. *See id.* at 236.

The second question—whether the official violated clearly established law, has been described by one Judge as "a doozy." *Morrow v. Meachum*, 917 F.3d 870, 874 (5ᵗʰ Cir. 2019). A §1983 plaintiff bears the burden of proof to overcome qualified immunity and the burden is heavy: A right is clearly established only if relevant precedent "ha[s] placed the ... constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, (2011). As noted by Judge Oldham, the pages of the *United States Reports* "teem with warnings about the difficulty of placing a question beyond debate."

There are also applicable principals to the qualified immunity inquiry. First, the constitutional question must be framed with specificity and granularity. For example, it is obviously beyond debate that the First

21

Amendment prohibits certain governmental conduct. Yet, that is not enough. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Supreme Court has "repeatedly told courts ... not to define clearly established law at [that] high level of generality." *al-Kidd*, 563 U.S. at 742. Rather, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quotation omitted); *see also Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). That is because qualified immunity is inappropriate only where the official had "fair notice"—"in light of the specific context of the case, not as a broad general proposition"—that his *particular* conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quotation omitted). ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."). Substitute "speech" for "searches and seizures" and the concept is the same in this matter.

Courts must also think twice before denying qualified immunity. The Supreme Court reserves "the extraordinary remedy of a summary reversal" for decisions that are "manifestly incorrect." *Kisela*, 138 S.Ct. at 1162 (Sotomayor, J., dissenting) (quotation omitted). Yet it routinely

22

wields this remedy against denials of qualified immunity. *See, Wesby v. District of Columbia,* 816 F.3d 96, 102 (D.C. Cir. 2016) (Kavanaugh, J., dissenting from the denial of rehearing en banc) ("Indeed, in just the past five years, the Supreme Court has issued 11 decisions reversing federal courts of appeals in qualified immunity cases, including five strongly worded summary reversals."), *rev'd,* 538 U.S. 48 (2018). As Judge Oldham explained, "We'd be ill advised to misunderstand the message and deny qualified immunity to anyone 'but the plainly incompetent or those who knowingly violate the law.'" *Morrow,* 917 F.3d at (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Plaintiff found the teachings of the Supreme Court and the admonitions of the Fifth Circuit regarding qualified immunity to be so compelling that he ignored all of them in his response to the Individual Defendants' motion for summary judgment. Plaintiff failed to even mention the concept.

### Plaintiff Failed to Create a Fact Issue on the First Prong of Qualified Immunity

Plaintiff alleged in his Third Amended Complaint in Count One that the Individual Defendants violated his First Amendment rights by

banning him from the City's Facebook page.[3] Defendants produced evidence that Plaintiff posted on Facebook before, during and after this lawsuit was filed. Further, the Defendants testified that: 1. They had no involvement with the Facebook page creation, page rules or its administration; 2. They had not removed any posts of Plaintiff from any social media site of the City and had not instructed anyone to do so; 3. They did not ban Plaintiff from any social medica site; 4. They did not instruct anyone to do so. ROA.409-410, 433, 470. Plaintiff did not controvert a single sentence of that testimony and Plaintiff created no fact question as to whether the Individual Defendants violated a constitutional right.

Presumably, Plaintiff tried to get somewhere in the neighborhood of satisfying his burden when he provided the names of the individuals he believes administer the social media sites in his Declaration. ROA.608. However, he then failed to make the next step i.e. to provide evidence that those individuals acted, they acted improperly (by banning him or removing posts) and more importantly for the qualified immunity

---

[3] In Plaintiff's Third Amended Complaint, the only allegations asserted against the Individual Defendants relates to "censorship" of Plaintiff on the Facebook page. [See, ROA.13-23].

question, acted under the order of one or more of the Individual Defendants.

Under §1983, supervisory officials are not vicariously liable for the conduct of their subordinates. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) To hold supervisors liable, a plaintiff must prove "either that they participated in acts that caused the constitutional deprivation or that they implemented unconstitutional policies causally related to his injuries." *Id.* at 421. Ratification is not a viable theory of liability against a supervisor. *Khansari v. City of Houston*, 14 F.Supp.3d 842, 867 (S.D. Tex. 2014) ("This Court is not aware of and plaintiffs have not cited any cases imposing personal liability on a supervisor based on ratification.").

Plaintiff failed to present a shred of evidence that the Individual Defendants played any role in the administration of the social media sites of the City and presented no evidence that they ordered any post removed, limited or that Plaintiff be banned. There was equally no personal involvement with the political signs. They were entitled to qualified immunity on the first prong of the qualified immunity standard.

**Plaintiff Utterly Failed to Satisfy the Second Prong of Qualified Immunity**

To overcome the second prong of qualified immunity (the "doozy"), a plaintiff must identify a case or a series of cases which would give an official "fair notice" that his actions would be unconstitutional for a plaintiff to overcome the defense of qualified immunity.

Here, Plaintiff did not even attempt to frame the question in his response to the motion for summary judgment and now tries to frame that question in his appellate brief as "whether it is 'clearly established' that government officials cannot censor speech that is unpleasantly sharp or caustic." [Appellant's Brief, Issue 2]. That strawman formulation is exactly the wrong formulation under *Brosseau,* 543 U.S. at 198 ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.").

Plaintiff has failed to even attempt to frame the qualified immunity question narrowly as he must do much less point to a string of cases establishing "settled law" under these facts, In a case with rather unique facts, *Lincoln v. Scott*, 887 F.3d 190, 196 (5th Cir. 2018), this Court held:

The intricate facts here—reasonableness of detaining a sole,

26

compliant witness to a police shooting—have never been directly addressed or clearly established by this Circuit or the Supreme Court . . . Our inability to point to a string of cases establishing 'settled law' that these facts amount to a Fourth Amendment violation demonstrates that the violated right was not so clearly established that these officers can be liable.

*Lincoln*, 887 F.3d at 198.

The same concepts apply here. In this unique factual case, Plaintiff has failed to set forth a case or series of cases that would give the Individual Defendants notice that a allowing a  limited public forum social media site to merely exist, with content neutral terms prominently displayed, subject to Facebook's terms of service, with a third party administrator, was a violation of his constitutional rights by the Individual Defendants. Without such a case or series of cases, the law is not clearly established, and Keith Bell, Kimberley Yancy and Randall Aragon are entitled to qualified immunity.[4]

---

[4] Appellant argues in his Brief that the burden to overcome qualified immunity should not be on the Plaintiff. [Appellant's Brief, p. 28]. However, it is clear that is the burden recognized by dozens of Fifth Circuit cases. See*, Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc); *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Morgan*). Plaintiff's argument fails under the "well-settled Fifth Circuit rule of orderliness that one panel of [this] court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or [the Fifth Circuit] en banc court." *Buehler v City of Austin*, 824 F.3d 548, 554 (quoting *Robinson v. J&K Admin. Mgmt. Servs.*, 817 F.3d 193, 197 (5th Cir. 2016) (quoting *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)).

This novelty of social media and First Amendment claims was recognized by Supreme Court Justice Thomas in his concurring opinion in *Biden v. Knight First Amend. Inst. At Columbia Univ.*, 141 S. Ct. 1220, 1221 (2021) (Thomas, C., concurring in holding of vacating due to mootness, and discussing *Knight First Amdt. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2019) ("I write separately to note that this petition highlights the principal legal difficulty that surrounds digital platforms--namely, *that applying old doctrines to new digital platforms is rarely straightforward.* Respondents have a point, for example, that some aspects of Mr. Trump's account resemble a constitutionally protected public forum. But it seems rather odd to say that something is a government forum when a private company has unrestricted authority to do away with it ... Yet, the Second Circuit's conclusion that Mr. Trump's Twitter account was a public forum is in tension with, among other things, our frequent description of public forums as 'government-controlled spaces.'" (emphasis added)

In response to all of this complexity and the need for the question to be narrowed, Plaintiff's best retort is "the government cannot censor speech." Plaintiff did not slosh through the factual morass and apply it

28

to the evolving law. As a result, he failed to overcome either prong of qualified immunity with regard to the Individual Defendants.

**Issue 4: Plaintiff abandoned his municipal liability claim by not addressing it in his response to the City's motion for summary judgment.**

The City filed a motion for summary judgment separately from the Individual Defendants. ROA.486. It asserted in its motion for summary judgment that it had no policy and there was no pattern or practice of violating Plaintiff's constitutional rights. It provided an explanation that the policy of the City regarding political signs was content neutral regulation. ROA.454.  In addition, the City also explained its social media sites regulation as a limited public forum that is subject to the terms and conditions on the site, by Facebook terms of service and that the intention and policy of the City is to have the limited public forum administered in a content neutral fashion.  ROA.454-455. In his response to the motion for summary judgment, Plaintiff failed to oppose the City's motion, failed to cite *Monell* and never even used the words "municipal liability."

This Court has consistently held that when a plaintiff fails to pursue a claim beyond the party's initial complaint, the claim is deemed abandoned. *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir.

29

2006) (plaintiff abandoned retaliatory abandonment claim when she failed to defend claim in response to motion to dismiss); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (party "in his opposition to a motion for summary judgment cannot abandon an issue and then ... by drawing on the pleadings resurrect the abandoned issue").

The district court was correct in holding that Plaintiff abandoned his municipal liability claim when he failed to make a single cogent argument responding to the City's motion in his response.

**Issue 5: The district court was correct in concluding that the City of La Marque established its entitlement to summary judgment as a matter of law.**

The City asserted in its Motion for Summary Judgment that it had no policy and there was no pattern or practice of violating Plaintiff's constitutional rights. It provided an explanation that the policy of the City regarding political signs was content neutral regulation. ROA.454. In addition, the City also explained its social media sites regulation as a limited public forum that is subject to the terms and conditions on the site, by Facebook terms of service and that the intention and policy of the City is to have the limited public forum administered in a content neutral fashion. ROA.454-455.

Although Plaintiff alleged the City violated his constitutional rights, he did so in the sense of the City as a monolith. What Plaintiff failed to do with regard to the City was provide *any* specific context behind his allegations. What was said, what was hidden, who hid it and why? When was it done? Did Facebook do it? If someone at the City did it, who was it? Why was it done? Without trying to answer any of those questions, Plaintiff simply alleged the "City did it." That is not enough in response to a motion for summary judgment. Not under *Monell*.

Municipal liability cannot be sustained under a theory of *respondeat superior* or vicarious liability. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). A municipality is only liable under § 1983 for acts that are "directly attributable to it 'through some official action or imprimatur.'" *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (*quoting Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Plaintiff's allegations were made against the monolith of "the City" without reference to a person or even a position within the City. Plaintiff made no reference to the City's form of government and, therefore, who

31

the "policymaker" is under Texas law. There was never a "*who*" in the allegations.

Plaintiff would like for this case to be *Robinson v. Hunt County.,* 921 F.3d 440 (5th Cir. 2019) (Facebook page of a sheriff's department was a forum subject to First Amendment protection, precluding sheriff's office from *admitted* discrimination based on the viewpoints of those posting). But it is not. Here, the Individual Defendants played no role in administering the social media site. In addition, all of the City employees and officials denied (in sworn, summary judgment evidence admissible declarations) that Plaintiff has been blocked or banned and provided indisputable evidence that Plaintiff posted comments on the City's Facebook page before, during and after the lawsuit was filed.

Content-neutral social media policies that may lead to some content being limited can be constitutional. *Reed v. Town of Gilbert*, 576 U.S. 155, (2015) (First Amendment standards allows when content-neutral, narrowly tailored, serves a significant government interest, and allows alternative communication channels).  The government may restrict speech in limited public forums, as long as the regulation (1) does not discriminate against speech on the basis of viewpoint and (2) is

reasonable in light of the purpose served by the forum. A restriction based on subject matter "may be permissible if it preserves the purposes of that limited forum." *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 758-60 (5th Cir. 2010); *See also*, *Monroe v. Houston Indep. Sch. Dist.*, No. CV H-19-1991, 2019 WL 13252407, at *6 (S.D. Tex. 2019) ("The evidence confirms that the ban was based on HISD's concern over Plaintiff's threatening behavior and not on his criticism or negative view of the school board or certain administrators").

In this case, Plaintiff made vague, conclusory and fact-less assertions of municipal liability. Plaintiff's threadbare assertions *may…may* adequately create a fact question that some City employee, some time, somewhere, made a poor decision about a social media post or a political sign. However, the isolated poor judgment of a municipal worker does not create *Monell* liability and the district court was correct in granting the City's motion for summary Judgment.

**Issue 6: Plaintiff's law of the case argument ignores that all the court held was that he had plausibly alleged a claim.**

The district court did not err in denying Plaintiff's motion for reconsideration. [Appellant's Brief at pp. 18-25] A Rule 59(e) motion is "an extraordinary remedy that should be used sparingly." *Templet v.*

33

*HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "We review the denial of a Rule 59(e) motion only for abuse of discretion." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

The text of Rule 59(e) does not specify the available grounds for obtaining such relief. But this Court has explained that Rule 59(e) motions "are for the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence"—not for raising arguments "which could, and should, have been made before the judgment issued." *Faciane v. Sun Life Assurance Co. of Canada*, 931 F.3d 412, 423 (5th Cir. 2019) (cleaned up). Rule 59(e) does allow a party to alter or amend a judgment when there has been an intervening change in the controlling law. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567–68 (5th Cir. 2003). However, none of those conditions were met in this case and the district court correctly noted the standard, reasons and correctly denied the motion. ROA.1020.

Plaintiff's newly minted "law of the case" argument presented first in the motion to reconsider presents nothing to consider on appeal. This Court will typically not consider an issue or a new argument raised for the first time in a motion for reconsideration in the district court. *Lincoln Gen.*

34

*Ins. Co. v. De La Luz Garcia,* 501 F.3d 436, 442 (5th Cir. 2007) ("[G]enerally speaking, we will not consider an issue raised [in the district court] for the first time in a Motion for Reconsideration."); *Leverette v. Louisville Ladder Co.,* 183 F.3d 339, 342 (5th Cir. 1999) (per curiam); *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.,* 761 F.3d 409, 425 (5th Cir. 2014). Plaintiff failed to raise the argument in his response to the motion for summary judgment and cannot raise it on appeal. See, ROA.585-596.

If this Court was to get past the abuse of discretion standard and the waived appellate argument problems, what Plaintiff gets wrong in the "law of the case" argument is that all the district court ruled in the order on the 12(c) motion was that Plaintiff had made *plausible allegations*, not that he had proved his case. However, when confronted with summary judgment proof of the City and the Individual Defendants, Plaintiff failed to prove his case as "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (cleaned up). Further, Rule 56 does not

require courts to "sift through the record in search of evidence" to support the nonmovant's opposition to the summary judgment motion. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir.1993); *Forsyth,* 19 F.3d at 1533.

Once again, Plaintiff's flimsy, wisp-of-wind response to the motions for summary judgment did nothing to controvert the declaration testimony of the Individual Defendants or the testimony of the City officials. Plaintiff's declaration was riddled with threadbare factual claims, conclusory statements with non-existent or at least questionable evidence to support them. Plaintiff never established the who, what, when and how principles necessary to survive summary judgment. The non-moving party must submit or identify evidence in the summary judgment record... that designate[s] *specific facts* showing there is a genuine issue of fact." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). "The non-movant is also required to

articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Id.*

Plaintiff failed throughout this case to get into the factual weeds. What posts were allegedly hidden or removed? What did they say? When was it done? Was it done by Facebook or the third party administrator of the City? If it was an employee of the City, who was it and why did they do it? Was the removal content neutral when compared to other removals?

The City asserted in its motion for summary judgment that it had no policy and there was no pattern or practice of violating Plaintiff's constitutional rights by banning Plaintiff from commenting on its Facebook page. In fact, it provided evidence of the opposite, that Plaintiff posted and posted often before and during the lawsuit. It provided an explanation that the policy of the City regarding political signs was content neutral regulation. In addition, the City also explained its social media sites regulation and the non-involvement of the Individual Defendants in same.

In response to that proof, Plaintiff alleged in his response that some posts, some time, in some way, have been hidden or that he has been

37

prevented from "tagging" the City. No context and no explanation. The district court was not required to sift through the manifesto like declaration and multiple irrelevant exhibits to make Plaintiff's argument for him. The district court was correct in denying Plaintiff's motion for reconsideration.

## CONCLUSION

The district court's orders partially granting the 12(c) motion to dismiss and granting the motions for summary judgment and dismissing all of Appellant's claims against all of the Defendants should be affirmed.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

*/s/ Steven D. Selbe*
**Steven D. Selbe**
Texas State Bar No. 18004600
sselbe@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas  77027
Telephone: (713) 961-3366
Facsimile: (713) 961-3938

**ATTORNEY FOR DEFENDANTS -APPELLEES**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this date, February 6, 2026.

/s/ *Steven D. Selbe*
**Steven D. Selbe**

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because the entire brief contains 8,789 words.

I also certify that this brief complies with the typeface requirements of FED. R. APP. P. 32 (a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook type.

/s/ *Steven D. Selbe*
Steven D. Selbe