No. 25-40519

# United States Court of Appeals

### FIFTH CIRCUIT

JOSEPH LOWRY,

*Plaintiff-Appellant,*

—*vs.*—

CITY OF LA MARQUE, TEXAS; KEITH BELL, *in his individual capacity and in his official capacity*; KIMBERLEY YANCY, *in her individual capacity and in her official capacity*; RANDALL ARAGON, *in his individual capacity and in his official capacity,*

*Defendants-Appellees.*

*On Appeal from the*
*United States District Court for the Southern District of Texas*
*No. 3:22-cv-00112, Hon. Andrew Edison*

## APPELLANT JOSEPH LOWRY'S BRIEF

CURT HESSE
  Tex. Bar No. 24065414
    curt@mooreandassociates.net

MELISSA MOORE
  Tex. Bar No. 24013189
    melissa@mooreandassociates.net

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
t (713) 222-6775
f (713) 222-6739
www.mooreandassociates.net

April 8, 2026

## CERTIFICATE OF INTERESTED PERSONS

As required by Fed. R. App. P. 26.1, 28(a)(1) and 5th Cir. R. 28.2.1, 28.3(a), the undersigned counsel of record for Plaintiff-Appellant Joseph Lowry certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of the United States Court of Appeals for the Fifth Circuit may evaluate possible disqualification or recusal.

| | |
|---|---|
| Appellant | Joseph Lowry |
| Counsel for Appellant | Curt Hesse<br>Melissa Moore<br>MOORE & ASSOCIATES<br>Lyric Centre<br>440 Louisiana Street, Suite 1110<br>Houston, Texas 77002-1055<br>www.mooreandassociates.net |
| Appellees | City of La Marque, Texas<br>Keith Bell<br>Kimberley Yancy<br>Randall Aragon |
| Counsel for Appellees | Steven Selbe<br>GORDON REES SCULLY MANSUKHANI LLP<br>TransWestern Tower<br>1900 West Loop South, Suite 1000<br>Houston, Texas 77027-3264<br>https://www.grsm.com/ |

s/ Curt Hesse
_____
Curt Hesse

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Joseph Lowry requests oral argument. This case involves numerous factual and legal issues. The Court's consideration of these issues may be assisted or advanced by the presence of the parties before the Court to comment upon the issues and respond to inquiries by the Court. Fed. R. App. P. 34(a)(1); 5th Cir. R. 28.2.3, 28.3(b), 34.2.

s/ Curt Hesse
———————————————
Curt Hesse

## TABLE OF CONTENTS

Page

Certificate of Interested Persons ........................................................ *i*

Statement Regarding Oral Argument ................................................. *ii*

Table of Contents ............................................................................ *iii*

Table of Authorities ......................................................................... *v*

Statement of Jurisdiction ................................................................... 1

Statement of the Issues ...................................................................... 2

    1.  whether the district court erred in dismissing Lowry's First Amendment retaliation claim and his defamation claims on the pleadings under Rule 12(c) ............................................... 2

    2.  whether it is whether it is "clearly established" that government officials cannot censor speech that is unpleasantly sharp or caustic ................................................. 2

    3.  whether the district court manifestly erred by refusing to reconsider its order granting summary judgment in favor of La Marque, Bell, Yancy and Aragon ....................................... 2

Statement of the Case ....................................................................... 3

Summary of the Argument ................................................................ 8

Argument & Authorities ................................................................... 8

    1.  Standards of Review ............................................................. 8

        a.  Motions for Judgment on the Pleadings Under Rule 12(c) ........... 8

        b.  Motions for Summary Judgment Under Rule 56 ........................ 10

        c.  Motions for Reconsideration Under Rule 59(e) ......................... 12

    2.  The district court erred in dismissing Lowry's defamation claims and his First Amendment retaliation claim under Rule 12(c), and this Court should reverse ................................................ 14

# TABLE OF CONTENTS
(continued)

Page

a. Accusing someone of domestic terrorism—a very serious crime—in response to being criticized is actionable First Amendment retaliation ........................................ 14

b. The defamation claims against Aragon and Yancy are actionable.................................................................. 15

3. The district court erred in granting summary judgment under Rule 56 in favor of La Marque, Aragon, Bell and Yancy, and this Court should reverse ............................................. 16

4. The district court erred in denying Lowry's motion for reconsideration, and this Court should reverse ................................. 18

a. The district court manifestly erred by dismissing Lowry's First Amendment claims because the authority on which the district court relied is inapposite ........................... 18

b. The district court manifestly erred by dismissing Lowry's First Amendment claims because the issue about whether his rights were........................................................ 24

c. The district court manifestly erred by dismissing Lowry's First Amendment claims because its prior order determining that, to establish a First Amendment violation, it was enough for Lowry to show that he had temporarily banned from Facebook or that his "speech has been curtailed[]" because of defendants' conduct, including protests, Aragon's comments regarding police protection for those making "anti-city administration" remarks, threats of arrest, etc. is the law of the case .................. 25

d. Requiring a litigant to affirmatively negate a defense appears to conflict with Supreme Court precedent...................... 28

e. Lowry did not waive his *Monell* claim .......................................... 28

Conclusion ................................................................................................ 31

Signature.................................................................................................. 32

## TABLE OF CONTENTS
(continued)

Page

Certification Regarding Electronic Submission ............................................... 33

Certificate of Service ........................................................................................ 34

Certificate of Compliance ................................................................................ 35

**TABLE OF AUTHORITIES**

Page

**Cases**

*Arizona v. California*,
460 U.S. 605 (1983) ............................................................. 27

*Ashcroft v. al-Kidd*,
131 S. Ct. 2074 (2011) ........................................................ 23

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) .............................................. 9

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
906 F.2d 1185 (7th Cir. 1990) ................................................. 13

*Barret v. Baylor*,
457 F.2d 119 (7th Cir. 1972) ................................................. 26

*Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constr., Inc.*,
804 F.2d 879 (5th Cir. 1986) ................................................. 10

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
520 U.S. 397 (1997) ............................................................. 31

*Bernabe v. Rosenbaum*,
No. 21-10396,
2023 U.S. App. LEXIS 889 (5th Cir. 2023) .......................................... 19

*Berry v. Tex. Woman's Univ.*,
528 F. Supp. 3d 579 (E.D. Tex. 2021) .................................................. 22

*Brown v. Callahan*,
623 F.3d 249 (5th Cir. 2010) ................................................. 19

*Carswell v. Camp*,
54 F.4th 307 (2022) ............................................................ 24

*Cass v. City of Abeline*,
814 F.3d 721 (5th Cir. 2016) ................................................. 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................... 10, 11

## TABLE OF AUTHORITIES
(continued)

Page

*Chiu v. Plano Indep. Sch. Dist.*,
260 F.3d 330 (5th Cir. 2001) ..................................................... 17

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ............................................................ 25, 26

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509 (10th Cir. 1991) ............................................ 26, 27

*Chuttoo v. Horton*,
627 F. Supp. 3d 655 (E.D. Tex. 2022) ..................................... 22

*Ciralsky v. C.I.A.*,
689 F. Supp. 2d 141 (D.D.C. 2010) ............................................. 9

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
473 U.S. 788 (1985) ................................................................ 27

*Dewan v. M-I. L.L.C.*,
858 F.3d 331 (5th Cir. 2017) ..................................................... 12

*Doe v. Taylor Indep. Sch. Dist.*,
15 F.3d 443 (5th Cir. 1994) ................................................. 19, 20

*Fontenot v. Upjohn Co.*,
780 F.2d 1190 (5th Cir. 1986) .................................................. 11

*Fraire v. Arlington*,
957 F.2d 1268 (5th Cir. 1992) .................................................. 20

*Goodman v. Harris Cnty.*,
571 F.3d 388 (5th Cir. 2009) ..................................................... 31

*Gutierrez v. Cobos*,
841 F.3d 895 (10th Cir. 2016) .................................................. 22

*Hayman Cash Register Co. v. Sarokin*,
669 F.2d 162 (3d Cir. 1982) ..................................................... 26

**TABLE OF AUTHORITIES**
(continued)

Page

*Hebert v. FMC Techs., Inc.*,
No. 4:20-cv-02059,
2022 U.S. Dist. LEXIS 221858 (S.D. Tex. Sep. 28, 2022) ..................... 25

*Hetzel v. Bethlehem Steel Corp.*,
50 F.3d 360 (5th Cir. 1995) ...................................................................... 29

*Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*,
776 F.2d 1277 (5th Cir. 1985) .................................................................. 28

*Hoang v. Microsemi Corp.*,
No. 4:19-cv-01971,
2025 U.S. Dist. LEXIS 57052 (S.D. Tex. Mar. 27, 2025) ....................... 12

*Hunter v. Bryant*,
502 U.S. 224 (1991) .................................................................................. 24

*Hutcheson v. Dallas Cnty.*,
994 F.3d 477 (5th Cir. 2021) .................................................................... 24

*In re Cragar Indus.*,
706 F.2d 503 (5th Cir. 1983) .................................................................... 26

*Jett v. Dall. Indep. Sch. Dist.*,
491 U.S. 701 (1989) .................................................................................. 20

*John v. La. Bd. of Trustees for State Colleges & Universities*,
757 F.2d 698 (5th Cir. 1985) .................................................................... 28

*Johnson v. Johnson*,
385 F.3d 503 (5th Cir. 2004) ...................................................................... 8

*Johnston & Johnston v. Conseco Life Ins. Co.*,
732 F.3d 555 (5th Cir. 2013) .................................................................... 12

*Joseph ex rel. Estate of Joseph v. Bartlett*,
981 F.3d 319 (5th Cir. 2020) .............................................................. 18, 19

*Juster Assoc. v. Rutland*,
901 F.2d 266 (2d Cir. 1990) ....................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Kellogg Brown & Root Int'l, Inc. v. Altanmia Commer. Mktg. Co. W.L.L.*,
No. H-07-2684,
2009 U.S. Dist. LEXIS 16007 (S.D. Tex. Mar. 2, 2009) ........................ 12

*L.C. Eldridge Sales Co. v. Azen Mfg. PTE, Ltd.*,
No. 6:11-cv-599,
2012 U.S. Dist. LEXIS 196631 (E.D. Tex. Dec. 10, 2012) .................. 8, 9

*Lipnicki v. Meritage Homes Corp.*,
No. 3:10-cv-605,
2014 U.S. Dist. LEXIS 32951 (S.D. Tex. Feb. 13, 2013)...................... 11

*Magnetic Emg'g Mfg. v. Dings Mfg.*,
178 F.2d 866 (2d Cir. 1950) ................................................................ 26

*McKee v. CBF Corp.*,
299 F. App'x 426 (5th Cir. 2008) ........................................................ 11

*Mello v. Sara Lee Corp.*,
431 F.3d 334 (5th Cir. 2005)............................................................... 10

*Merritt Hawkins & Assocs., L.L.C. v. Gresham*,
861 F.3d 143 (5th Cir. 2017)............................................................... 12

*Messerschmidt v. Millender*,
132 S. Ct. 1235 (2012) ........................................................................ 23

*Mitchell v. Forsyth*,
472 U.S. 511 (1995) ............................................................................ 18

*Morgan v. Fed. Express Corp.*,
114 F. Supp. 3d 434 (S.D. Tex. 2015) ................................................. 29

*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2019)............................................................... 22

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ...................................................................... 14, 23

**TABLE OF AUTHORITIES**
(continued)

Page

*Oliver v. Klein Indep. Sch. Dist.,*
  448 F. Supp. 3d 673 (S.D. Tex. 2020) ...................................................... 22

*Owsley v. San Antonio Indep. Sch. Dist.,*
  187 F.3d 521 (5th Cir. 1999) ................................................... 10

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ................................................. 19

*Peterson v. City of Fort Worth,*
  588 F.3d 838 (5th Cir. 2009) ............................................. 20, 29

*Piotrowski v. City of Hous.,*
  237 F.3d 567 (5th Cir. 2001) .................................................. 20

*R.A.V.* v. *St. Paul,*
  505 U. S. 377 (1992) ............................................... 27

*Rafuse v. Advanced Concepts & Techs., Int'l, L.L.C.,*
  No. 22-51126,
  2024 U.S. App. LEXIS 24374 (5th Cir. 2024) .......................................... 9

*Randolph v. Dimension Films,*
  634 F. Supp. 2d 779 (S.D. Tex. 2009) ...................................................... 13

*Ratliff v. Aransas Cnty.,*
  948 F.3d 281 (5th Cir. 2020) .................................................. 20

*Richards v. Mitcheff,*
  696 F.3d 635 (7th Cir. 2012) .................................................. 10

*Robinson v. Hunt Cnty.,*
  921 F.3d 440 (5th Cir. 2019) ...................................................... 27, 30, 31

*Rockwell v. Brown,*
  664 F. 3d 985 (5th Cir. 2011) .................................................. 19

*Roofing Sheet Metal Serv. v. La Quinta Motor Inns,*
  689 F.2d 982 (11th Cir. 1982) .................................................. 26

**TABLE OF AUTHORITIES**
(continued)

Page

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ............................................................. 17, 27

*Ross v. Marshall*,
426 F.3d 745 (5th Cir. 2005) ..................................................... 13

*Schiller v. Physicians Res. Group Inc.*,
342 F.3d 563 (5th Cir.2003) ....................................................... 13

*Schneckloth v. Bustamonte*,
412 U.S. 218 (1973) ................................................................. 28

*Servants of the Paraclete v. Does*,
204 F.3d 1005 (10th Cir. 2000) .................................................. 13

*Shemwell v. Cannon*,
352 F. Supp. 3d 690 (N.D. Tex. 2019) .................................... 21, 22

*Surratt v. McClarin*,
851 F.3d 389 (5th Cir. 2017) ..................................................... 21

*Tolan v. Cotton*,
572 U.S. 650 (2014) ................................................................. 21

*Triple Tee Golf, Inc. v. Nike, Inc.*,
485 F.3d 253 (5th Cir. 2007) ..................................................... 10

*Tyler v. Cedar Hill Indep. Sch. Dist.*,
426 F. App'x 306 (5th Cir. 2011) .............................................. 12

*Turner Broad. Sys., Inc. v. FCC*,
512 U.S. 622 (1994) ................................................................. 17

*Vann v. City of Southaven*,
884 F.3d 307 (5th Cir. 2018) ..................................................... 21

*Warfield v. Byron*,
436 F.3d 551 (5th Cir. 2006) ..................................................... 12

*Wearry v. Foster*,
33 F.4th 260 (5th Cir. 2022) ....................................................... 8

## TABLE OF AUTHORITIES
(continued)

Page

*West Virginia St. Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) .................................................................... 23

*Wetherbe v. Tex. Tech. Univ. Sys.*,
  No. 19-11325,
  2025 U.S. App. LEXIS 12248 (5th Cir. 2025) ........................................... 8

*White v. Pauly*,
  580 U.S. 73 (2017) .................................................................... 21

*X Techs., Inc. v. Marvin Test Sys.*,
  719 F.3d 406 (5th Cir. 2013) ......................................................... 11

*Zarnow v. City of Wichita Falls Tex.*,
  614 F.3d 161 (5th Cir. 2010) ..................................................... 20, 29

**Statutes**

18 U.S.C. § 2331(5) ..................................................................... 14

28 U.S.C. § 1291 ...................................................................... 1, 2

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1343 ......................................................................... 1

28 U.S.C. § 1367(a) ...................................................................... 1

28 U.S.C. § 636(c) ....................................................................... 7

42 U.S.C. § 1981 ........................................................................ 20

42 U.S.C. § 1983 ................................................................... passim

42 U.S.C. §§ 2000e-2000e-17 .............................................................. 22

Tex. Civ. Prac. & Rem. Code § 101.106(f) ................................................. 15

Texas Tort Claims Act .................................................................... 6

**TABLE OF AUTHORITIES**
(continued)

Page

**Other Authorities**

Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* (1969) ...................................................... 9

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
*Federal Practice & Procedure* (1986) ...................................................... 26

J. Moore, B. Ward & J. Lucas,
*Moore's Federal Practice* (2d ed. 1982) .................................................. 26

Joan Steinman,
*Law of the Case: A Judicial Puzzle in Consolidated and Transferred
Cases and in Multidistrict Litigation,*
135 U. Pa. L. Rev. 595 (1987) ................................................................ 26

**Rules**

5th Cir. R. 25.2.1 ...................................................................................... 33

5th Cir. R. 25.2.13 .................................................................................... 33

5th Cir. R. 25.2.5 ...................................................................................... 34

5th Cir. R. 28.2.1 ........................................................................................ *i*

5th Cir. R. 28.2.3 ....................................................................................... *ii*

5th Cir. R. 28.3(a) ....................................................................................... *i*

5th Cir. R. 28.3(b) ...................................................................................... *ii*

5th Cir. R. 28.3(f) ........................................................................................ 2

5th Cir. R. 32.1 ......................................................................................... 35

5th Cir. R. 32.3 ......................................................................................... 35

5th Cir. R. 34.2 .......................................................................................... ii

Fed. R. App. P. 25(b) ............................................................................... 34

**TABLE OF AUTHORITIES**
(continued)

Page

Fed. R. App. P. 25(c) ...................................................................... 34

Fed. R. App. P. 26.1 ........................................................................ *i*

Fed. R. App. P. 28(a)(1) .................................................................. *i*

Fed. R. App. P. 28(a)(10) .............................................................. 35

Fed. R. App. P. 28(a)(5) ................................................................. 2

Fed. R. App. P. 32(a)(5) ............................................................... 35

Fed. R. App. P. 32(a)(6) ............................................................... 35

Fed. R. App. P. 32(a)(7)(B) .......................................................... 35

Fed. R. App. P. 32(f) .................................................................... 35

Fed. R. App. P. 32(g)(1) ............................................................... 35

Fed. R. App. P. 34(a)(1) ................................................................ ii

Fed. R. App. P. 4(a)(5) ................................................................... 2

Fed. R. Civ. P. 12(b)(6) ...................................................... 9, 13, 21

Fed. R. Civ. P. 12(c) ............................................................. passim

Fed. R. Civ. P. 12(d) ...................................................................... 9

Fed. R. Civ. P. 50(a) .................................................................... 11

Fed. R. Civ. P. 56 .................................................................. passim

Fed. R. Civ. P. 59(b) ...................................................................... 8

Fed. R. Civ. P. 59(e) ................................................... 2, 8, 12, 13

Fed. R. Civ. P. 60(b) ...................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

Page

## Constitutional Provisions

U.S. Const. amend. I ........................................................................ passim

U.S. Const. amend. II .............................................................................. 20

U.S. Const. amend. IV ................................................................. 20, 21, 22, 23

U.S. Const. amend. V .............................................................................. 20

U.S. Const. amend. VI ............................................................................. 20

U.S. Const. amend. XIV .................................................................... 4, 19, 20

U.S. Const. art. III ................................................................................. 1

## STATEMENT OF JURISDICTION

This is an appeal under 28 U.S.C. § 1291 from the final order or judgment of a district court that disposes of all parties' claims. On April 11, 2022, Plaintiff-Appellant Joseph Lowry ("Lowry") sued Defendant-Appellant City of La Marque, Texas ("La Marque"); Defendant-Appellant Keith Bell ("Bell"); Defendant-Appellant Kimberley Yancy ("Yancy") and Defendant-Appellant Randall Aragon ("Aragon") under 42 U.S.C. § 1983 for violating his constitutional rights. (*See generally*, ROA.9-29.) He also claimed that Yancy and Argon defamed him. (*See*, ROA.261-62.) The district court had federal-question jurisdiction over Lowry's § 1983 claims under 28 U.S.C. § 1331. *See also*, 28 U.S.C. § 1343. It had supplemental jurisdiction over Lowry's state law defamation claims because they were so related to the federal claims that they formed part of the same case or controversy under U.S. Const. art. III. *See*, 28 U.S.C. § 1367(a) (supplemental jurisdiction).

On April 14, 2023, La Marque, Bell, Yancy and Aragon moved to dismiss Lowry's complaint on the pleadings under Rule 12(c). (*See*, ROA.275-322.) The district court granted the motion in part; it dismissed some of Lowry's constitutional claims and both of his defamation claims on the pleadings under Rule 12(c) on January 25, 2024. (*See*, ROA.353-69.) Ten months later, La Marque, Bell, Yancy and Aragon moved for summary judgment on Lowry's remaining claims under Rule 56. (*See generally*,

– 1 –

ROA.391-578.) The district court granted that motion and entered judgment against Lowry on April 24, 2025. (ROA.960-68.)

Lowry moved for reconsideration under Rule 59(e) on May 22, 2025. (ROA.969-1007.) The district court denied that motion on June 16, 2025. (ROA.1020-21.) By written order under Fed. R. App. P. 4(a)(5), it extended the deadline for Lowry to appeal until August 15, 2025. (ROA.1031.) Lowry timely appealed on August 15, 2025. (ROA.1032.) This Court has appellate jurisdiction from the final decision of a district court under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

In accordance with Fed. R. App. P. 28(a)(5) and 5th Cir. R. 28.3(f), the following issues are being submitted for review:

1. whether the district court erred in dismissing Lowry's First Amendment retaliation claim and his defamation claims on the pleadings under Rule 12(c);

2. whether it is "clearly established" that government officials cannot censor speech that is unpleasantly sharp or caustic; and

3. whether the district court manifestly erred by refusing to reconsider its order granting summary judgment in favor of La Marque, Bell, Yancy and Aragon.

## STATEMENT OF THE CASE

Joseph Lowry is a resident of La Marque, Texas, a business owner and political activist.[1] (*See*, ROA.586, 597.) He has been an outspoken critic of La Marque, members of city council (Yancy), the mayor (Bell) and the police chief, and he frequently reports on public corruption and mismanagement. (ROA.586, 597.) He has spearheaded efforts to lower taxes, recall Bell and recall Yancy. (ROA.586, 598.) He personally financed those efforts, including having signs made supporting both him and his initiatives. (ROA.586, 598.) In perhaps the most obvious violation of the First Amendment, La Marque and its officials had the signs removed because of their messages, leaving others untouched, and the city admits it. (ROA.586, 598-603, 614-27.)

Lowry also made numerous comments critical of the police chief (Aragon) because of his checkered past, which Lowry believed disqualified him from serving as chief of police. (ROA.587, 603-605, 628-776.) Because of those comments—which Aragon referred to as "anti-city administration" (ROA.743-44), Lowry was forcibly removed from city council meetings (ROA.604), called a domestic terrorist (ROA.605) and told that police services would be withheld from him (ROA.605). In fact, Aragon specifically told members of the police department that they had "to do something about"

---

[1] During the pendency of the underlying lawsuit, Lowry was elected to La Marque city council. (ROA.586, 597.)

Lowry suing the city and suggested that he be arrested. (ROA.847.) In response to being sued, Aragon also contacted the State of Washington, which issued Lowry's driver's license, to have it suspended. (ROA.847, 849.) He also ordered that Lowry be arrested for violating a temporary restraining order that had expired and was, therefore, not actionable (ROA.847-48, 850), and he encouraged citizens to make false police reports about Lowry so that they could charge him with a crime. (ROA.848, 854.)

In response to Lowry's constitutionally protected speech, Bell and Yancy conspired to harm his business and to exile him from La Marque. (ROA.605-607.) La Marque, which also operates up to three (or more) Facebook pages has temporarily or totally hidden/deleted some of Lowry's comments and prevented him from "tagging" it in posts that he shares and that are critical of it, Yancy, Aragon and Bell and did so while their dispositive motion was pending in the trial court. (ROA.605, 607-610, 828-30.)

Lowry filed this lawsuit against La Marque, Bell, Yancy and Aragon under 42 U.S.C. § 1983 claiming that those actions violated his First Amendment right to freedom of speech (ROA.251-54) and his Fourteenth Amendment right to due process (ROA.254-56). He also made a *Monell* claim against La Marque for maintaining an unconstitutional local government custom policy, or practice (ROA.256-61), and he claimed that the domestic terrorist comments by Aragon and Yancy were defamatory (ROA.261-62).

In his complaint, Lowry specifically alleged that he expressed his views "on La Marque's Facebook page" and that the city and its elected officials "do not share his views" and, in fact, "strongly disagree with [him] on just about everything." (ROA.242-43.) All of the defendants *admitted* to those allegations. (*See*, ROA.385-86.) Lowry also specifically pointed out *in his complaint, with citations to legal precedent,* that the Supreme Court has said, unequivocally, that there were *no exceptions* to the First Amendment's prohibition against censoring political speech and that it absolutely entitles Lowry to make "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." (ROA.243.) None of the defendants denied that allegation. (*See*, ROA.386.)

La Marque, Bell, Yancy and Aragon moved for dismissal of Lowry's First Amendment claims under Rule 12(c). (*See generally*, ROA.275-322.) Although it could (and, under Fifth Circuit precedent *should*) have moved for dismissal of Lowry's claims based on qualified immunity on the pleadings, it did not.[2] (*See generally*, ROA.275-322.) Indeed, in its motion, it decidedly did *not* claim (because it *could not* legitimately claim) that Lowry's rights to criticize government officials or to engage in political speech without being censored were anything but clearly established. In response, Lowry again pointed out that the Supreme Court has gone out of its way to explain that the

---

[2] See *infra* page 24.

First Amendment prohibits government officials from censoring comments critical of them. (*See*, ROA.334, 335-36.)

The district court granted the Rule 12(c) motion in part. (*See generally*, ROA.353-69.) Specifically, it held that "the defendants labeling [Lowry] a domestic terrorist [and other similar epithets] cannot plausibly support his claim for First Amendment retaliation." (ROA.365.) The district court relatedly held that the Lowry could not pursue defamation claims against Aragon and Yancy in their individual capacity based on the "domestic terrorist" comments because they were barred by the Texas Tort Claims Act. (*See*, ROA.366-68.) However, in its order, the district court specifically held that conduct like temporarily banning Lowry "from posting [on Facebook] or tagging the city in other posts[,]" (ROA.365), or threatening "to arrest him for attending a city-council meeting[,] (ROA.366), were, if true—and they are true—violations of the First Amendment and that those claims could proceed. (*See*, ROA.365-66; *see also*, ROA.362 (explaining, with citation to legal authority, that the "First Amendment prohibits not only direct limitations on speech but also adverse government action against in individual because of [his] (sic) exercise of First Amendment freedoms[]"); ROA.364, 365-66.) In other words, at the time the district court entered its order on the Rule 12(c) motion, there could be no legitimate dispute in this case as to the contours of

Lowry's "clearly established" First Amendment rights. That issue had been correctly settled by the court; it was the law of the case.

Ten months after the district court's ruling on the defendants' Rule 12(c) motion, they moved for summary judgment under Rule 56 on Lowry's remaining claims. (*See generally*, ROA.391-578.) The motions largely rehashed the same arguments that the district previously (and correctly) rejected in connection with the Rule 12(c) motion. (*See generally*, ROA.391-578.) And, in spite of being put on actual notice by Lowry in both his complaint and his response to the defendants' motion to dismiss and by the district court in its order on the motion to dismiss and by Lowry in his response to the motions for summary judgment (*see, e.g.*, ROA.591, 593-94)—and the unequivocal command of the text of the First Amendment—La Marque, Aragon, Bell and Yancy unbelievably claimed that "[t]here [was] no case or series of cases that would give" them notice that censoring speech is unconstitutional. (*See*, ROA.406.)

In spite of its prior ruling, the district court then an about face[3] and agreed with La Marque, Aragon, Bell and Yancy that Lowry's constitutional rights were not clearly established and, therefore, that his claims should be dismissed on summary judgment under Rule 56. (*See*, ROA.960-68.) Because

---

[3] After ruling on the Rule 12(c) motion, United States District Judge Jeffrey Brown transferred this case to United States Magistrate Judge Andrew Edison under 28 U.S.C. § 636(c) by agreement of the parties.

of the conflicting rulings, Lowry sought reconsideration of the district court's order on summary judgment under "under Rule 59(b), Rule 59(e) and Rule 60(b)." (ROA.988.) That motion was denied in a one-page order (ROA.1020), and this appeal followed (ROA.1032-34).

## SUMMARY OF THE ARGUMENT

The Court should reverse. The First Amendment plainly and unequivocally prohibits government officials from censoring speech. Accordingly, and for the reasons explained below, the district court erred in dismissing Lowry's claims against La Marque, Aragon, Bell and Yancy that Lowry under Rule 12(c) and Rule 56.

## ARGUMENT & AUTHORITIES

### 1. Standards of Review

#### a. Motions for Judgment on the Pleadings Under Rule 12(c)

This Court reviews "a district court's [ruling on] a Rule 12(c) motion for judgment on the pleadings *de novo*." *Wearry v. Foster*, 33 F.4th 260, 265 (5th Cir. 2022) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)); *see also*, *Wetherbe v. Tex. Tech. Univ. Sys.*, No. 19-11325, 2025 U.S. App. LEXIS 12248, at *6-*7 (5th Cir. 2025). "[M]otions for judgment on the pleadings are disfavored and rarely granted." *L.C. Eldridge Sales Co. v. Azen Mfg. PTE, Ltd.*, No. 6:11-cv-599, 2012 U.S. Dist. LEXIS 196631, at *5 (E.D. Tex. Dec. 10, 2012). They are analyzed under "the same standards as a motion[s] to dismiss under

Rule 12(b)(6)." *Id*. at *4-*5. A party moving under Rule 12(c) is "entitled to judgment on the pleadings only if it has established that 'no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.'" *Juster Assoc. v. Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368, at 690 (1969)). The non-moving party, of course, "enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations." *Ciralsky v. C.I.A.*, 689 F. Supp. 2d 141, 159 (D.D.C. 2010). And like a motion to dismiss for failure to state a claim under Rule 12(b)(6), the *sole* issue under Rule 12(c) is whether the plaintiff has plead enough facts to state a claim for relief that is plausible on its face. *L.C. Eldridge Sales Co*, 2012 U.S. Dist. LEXIS 196631 at *5. So in ruling on a motion under Rule 12(c), a court may not look beyond the pleadings.[4] Fed. R. Civ. P. 12(d); *see also, Rafuse v. Advanced Concepts & Techs., Int'l, L.L.C.*, No. 22-51126, 2024 U.S. App. LEXIS 24374, at *3 (5th Cir. 2024) ("In ruling on a 12(c) motion, the court must look only to the pleadings[.]"); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

---

[4] In other words, it does not matter that a defendant may have included extraneous information about its defenses in motions or discovery responses because Rule 12(d) expressly prohibits their consideration in the context of a motion for judgment on the pleadings. Fed. R. Civ. P. 12(d).

### b. Motions for Summary Judgment Under Rule 56

This Court reviews an order granting summary judgment *de novo*, using use the same standards as did the district court in considering facts and analyzing law. *Owsley v. San Antonio Indep. Sch. Dist.*, <u>187 F.3d 521, 523</u> (5th Cir. 1999). "Summary judgment is appropriate [if the summary-judgment evidence shows] 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mello v. Sara Lee Corp.*, <u>431 F.3d 334, 335</u> (5th Cir. 2005) (quoting <u>Fed. R. Civ. P. 56</u>). In making that determination, the Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*, <u>804 F.2d 879, 881</u> (5th Cir. 1986); *see also*, *Richards v. Mitcheff*, <u>696 F.3d 635, 638</u> (7th Cir. 2012) ("[J]udges must not make findings of fact at the … summary-judgment stage[]." (emphasis added)). Generally speaking, "[t]he movant bears the [initial] burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, <u>485 F.3d 253, 261</u> (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, <u>477 U.S. 317, 322-25</u> (1986)). However, if the movant will bear the burden of persuasion at trial (for example, when moving for summary judgment on any part of an affirmative defense), it must do more; in those cases, the movant "must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *McKee v. CBF Corp.*,

– 10 –

299 F. App'x 426, 428 (5th Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 331); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."); *see also*, Fed. R. Civ. P. 50(a) (standard for judgment as a matter of law, formerly known as a directed verdict).

In other words, the evidence offered in support of, for example, an affirmative defense, must be so overwhelming "that a reasonable jury would not have a legally sufficient evidentiary basis to find for [the nonmovant] on [the affirmative defense]." Fed. R. Civ. P. 50(a); *see also*, *X Techs., Inc. v. Marvin Test Sys.*, 719 F.3d 406, 411 (5th Cir. 2013) ("If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. But if reasonable persons could differ in their interpretations of the evidence, a determination of the issue is for the jury.") (citations and quotations omitted) (emphasis added); *see also*, *Lipnicki v. Meritage Homes Corp.*, No. 3:10-cv-605, 2014 U.S. Dist. LEXIS 32951, at *36 (S.D. Tex. Feb. 13, 2013) (Costa, J.) (observing that it is generally more difficult to obtain summary judgment on an affirmative defense). If—and only if—the party moving for summary judgment meets its threshold burden, the

– 11 –

nonmovant "must set forth specific facts showing that there is a genuine issue for trial[]" to overcome summary judgment. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *see also*, *Dewan v. M-I. L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (observing that movant on affirmative defense "must establish beyond peradventure *all* of the essential elements of the … defense to warrant judgment in his favor[]" (emphasis in original) (citations and quotations omitted)); *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 308 (5th Cir. 2011); *Hoang v. Microsemi Corp.*, No. 4:19-cv-01971, 2025 U.S. Dist. LEXIS 57052, at *8 (S.D. Tex. Mar. 27, 2025) (explaining that, to prevail on summary judgment on an affirmative defense, the movant must establish each element of the defense "with absolute certainty" (citing *Dewan*, 858 F.3d at 334)).

### c.  Motions for Reconsideration Under Rule 59(e)

"This Court reviews a district court's ruling on a Rule 59(e) motion for abuse of discretion, but questions of law are reviewed de novo." *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 157 (5th Cir. 2017) (citing *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 562 (5th Cir. 2013)); *see also*, *Kellogg Brown & Root Int'l, Inc. v. Altanmia Commer. Mktg. Co. W.L.L.*, No. H-07-2684, 2009 U.S. Dist. LEXIS 16007, at *12-*18 (S.D. Tex. Mar. 2, 2009) (Rosenthal, J.) (explaining that motions for reconsideration that are filed within twenty-eight days of the rendition of judgment "are generally analyzed under the standards for a motion to alter or amend judgment under

– 12 –

Rule 59(e)[.]"). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

"A Rule 59(e) motion calls into question the correctness of a judgment[,] … [and] must clearly establish either a manifest error of law or fact or must present newly discovered evidence[.]" *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 786 (S.D. Tex. 2009) (internal citations and quotations omitted) (involving reconsideration of dismissal under Rule 12(b)(6)). "A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citations omitted); *see also*, *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir.2003); *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.").

**2. The district court erred in dismissing Lowry's defamation claims and his First Amendment retaliation claim under Rule 12(c), and this Court should reverse.**

> **a. Accusing someone of domestic terrorism—a very serious crime—in response to being criticized is actionable First Amendment retaliation.**

As a threshold matter, the suggestion that La Marque, Bell, Yancy and Aragon are justified in taking any action vis-à-vis Lowry because he "engages in vile, vitriolic rhetoric about the City, Bell and Yancy over and over and over[]" (ROA.276) is part of the problem. Constitutional rights—*especially* the right to freedom of speech—aren't just for people we like. As the Supreme Court has painstakingly pointed out "over and over" (ROA.276) again, "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Lowry's comments absolutely "include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials[,]" *id.*, but they are undoubtedly protected by the First Amendment. On that point, there can be no dispute.

And while it's not surprising that city officials disagree with him, declaring him to be a "domestic terrorist" isn't mere name calling—it's accusing someone of criminal conduct. *See, e.g.*, 18 U.S.C. § 2331(5) ("[T]he term 'domestic terrorism' means activities that—(A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or

– 14 –

of any State; (B) appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States[.]"). And none of the cases cited by La Marque, Bell, Yancy and Aragon suggest otherwise. (*See generally*, ROA.285-86.) Those cases involve, for example, the use of racial epithets and homophobic comments—not being accused of a crime by members of law enforcement and government officials. This case is different, and the Court should, therefore, reverse.

### b. The defamation claims against Aragon and Yancy are actionable.

Public officials don't have a license to defame by virtue of their position. But that is precisely what Yancy and Aragon wanted the district court to hold, and it obliged them. In fact, it's even worse. Yancy and Aragon claimed in the first part of their Rule 12(c) motion that Lowry *cannot* bring any claims against La Marque even though Yancy and Aragon called him a domestic terrorist at a city council meeting. (ROA.284-86.) Then later, citing Tex. Civ. Prac. & Rem. Code § 101.106(f), Yancy and Aragon said that they should be dismissed from the lawsuit because those same claims—which they previously argued *weren't actionable* vis-à-vis the city—cannot be brought against Yancy and Aragon in their individual capacities because they *could*

*have been brought* La Marque and that it could be held vicariously liable to Lowry for the defamation. (*See,* ROA.287-90.) To reach that conclusion, they claim that defaming Lowry was part of their official job duties and/or responsibilities (or closely related to them because they were made in a city council meeting). (*See, id.*)

There are all sorts of problems with their reasoning. As a threshold matter, Yancy and Aragon are, in legal terms, "estopped" from taking inconsistent positions. And it should go without saying, but being an elected official is not a license to defame. And the suggestion that any action taken by an elected official during the course of a city council meeting isn't actionable against the official in his or her individual capacity is simply absurd. Suppose Aragon choked or shot Lowry during the meeting. Under his election-of-remedies theory, Lowry could not sue him for that plainly unlawful conduct. That cannot be right. Accordingly, the Court should reverse.

3. **The district court erred in granting summary judgment under Rule 56 in favor of La Marque, Aragon, Bell and Yancy, and this Court should reverse.**

"Section 1983 provides a private right of action for the deprivation of certain rights, privileges, and immunities." (ROA.356 (citing 42 U.S.C. § 1983).) "To sue under § 1983, a plaintiff must (1) allege that the defendant violated a right secured by the Constitution and laws of the United States and (2) show that a person acting under color of state law committed the

violation." (ROA.356-57.) This case centers around the First Amendment. To establish a Section 1983 violation based on the First Amendment, the district court determined early on that it is enough to show that Lowry was temporarily banned from Facebook or that his speech "has been curtailed[]" because of defendants' conduct, including protests, Aragon's comments regarding police protection for those making "anti-city administration" remarks, threats of arrest, etc. (*See*, ROA.363, 365-66.)

In response to the defendants' dispositive motions, Lowry buttressed those allegations—and not just the ones about Facebook—with evidence sufficient to create a genuine issue of material fact, including sworn testimony from a former La Marque police officer with firsthand knowledge of Aragon's unlawful conduct and text messages between Bell, Yancy and others conspiring to "destroy" him, evidence that his political speech (related to Bell's recall, Yancy's recall, and the tax initiative were specifically targeted by city officials. (*See generally*, ROA.597-610.) *See*, *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828-29 (1995) (explaining that discrimination against speech because of its message is presumptively and, according to the Supreme Court, "blatantly" unconstitutional because it censors particular views taken by speakers on a subject (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641–643 (1994))); *see also*, *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001) (describing "well-settled"

– 17 –

prohibition on viewpoint discrimination "in any forum"). Accordingly, summary judgment in favor of La Marque, Bell, Yancy and Aragon was error, and this Court should reverse.

**4. The district court erred in denying Lowry's motion for reconsideration, and this Court should reverse.**

   **a. The district court manifestly erred by dismissing Lowry's First Amendment claims because the authority on which the district court relied is inapposite.**

All (or nearly all) of the cases relied upon by the district court in making its decision to dismiss Lowry's First Amendment claims based on qualified immunity have *nothing to do with the First Amendment*. For example, in *Mitchell v. Forsyth*, 472 U.S. 511 (1995), the question was whether the Attorney General of the United States was entitled to qualified immunity in "a suit for damages stemming from a warrantless wiretap" on the telephone of a physics professor in violation of his Fourth Amendment rights. *See*, *Forsyth*, 472 U.S. at 513. Another case, *Cass v. City of Abeline*, 814 F.3d 721 (5th Cir. 2016), involved the execution of a warrant that involved a gunfight and resulted in the death of local business owners who sued for, among other things, violation of the decedent's Fourth Amendment rights. *See*, *Cass*, 814 F.3d at 724-27.

In *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) this Court was considering whether certain police officers were entitled to qualified immunity for beating a paranoid schizophrenic to death, which

included "twenty-six blunt-force injuries to his face, chest, back, extremities, scrotum, and testes" over an eight-minute period in violation of the decedent's Fourth Amendment rights. *Joseph*, 981 F.3d 325-27. Similarly, in *Rockwell v. Brown*, 664 F. 3d 985 (5th Cir. 2011), this Court was considering whether police officers, who shot and killed a man when executing an arrest warrant, were entitled to qualified immunity in a case brought by the decedent's parents for violations of his Fourth Amendment rights. *Rockwell*, 664 F.3d at 988-91.

Another case relied upon by the district court, *Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010), arose out of the death of a pretrial detainee whose estate claimed that the Sheriff of Wichita County, Texas, violated the decedent's Fourteenth Amendment rights. *Brown*, 623 F.3d at 252-54. In its opinion, the district court also cited *Bernabe v. Rosenbaum*, No. 21-10396, 2023 U.S. App. LEXIS 889 (5th Cir. 2023); that case, though, was also a Fourth Amendment excessive force case. *See*, *id*. at \*2-\*4. And in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court was considering whether a police officer was entitled to qualified immunity in performing a warrantless search in violation of the Fourth Amendment.

Another case, *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994), involved the application of qualified immunity to school officials who were sued for "supervisory failures" that led to the physical sexual abuse of a

student in violation of her Fourteenth Amendment rights. *See*, *Taylor Indep. Sch. Dist.*, 15 F.3d at 445, 450. In, *Piotrowski v. City of Hous.*, 237 F.3d 567 (5th Cir. 2001), Barbra Piotrowski claimed that the City of Houston violated her constitutional right to due process for "its failure to prevent her wealthy former boyfriend from attempting to kill her." *See*, *id.* at 572. In *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161 (5th Cir. 2010), a doctor sued a municipality and several police officers for violating his "Second, Fourth, Fifth, Sixth, and Fourteenth Amendment[]" rights when it for "misus[ing] … the plain view doctrine during home searches. *See*, *id.* at 165-66.

The issue *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009), was whether the City of Fort Worth was liable for a police officer's use of excessive force in violation an arrestee's Fourth Amendment rights. *See*, *id.* at 842. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701 (1989), was an Equal Protection Clause and § 1981 case primarily involving claims of discrimination based on race. *See*, *id.* at 736. *Fraire v. Arlington*, 957 F.2d 1268 (5th Cir. 1992), was another Fourth Amendment case involving claims of unconstitutionally excessive force by police that resulted in a shoot death after a high-speed chase. *See*, *id.* at 1269. In *Ratliff v. Aransas Cnty.*, 948 F.3d 281 (5th Cir. 2020), a suspect sued two sheriff's deputies, claiming that they "used unreasonable and excessive force in violation of the Fourth Amendment" when they shot him "during an armed confrontation[.]" *See*, *id.* at 283.

*Tolan v. Cotton*, 572 U.S. 650 (2014), was a Fourth Amendment excessive force case involving a police officer's shooting of an unarmed man he suspected to have stolen a car in which the Supreme Court vacated this Court's decision to grant the officer qualified immunity. In *White v. Pauly*, 580 U.S. 73 (2017), the Supreme Court considered whether, in a Fourth Amendment excessive force case, to grant qualified immunity to a police "officer who—having arrived late at an ongoing police action and having witnessed shots being fired by one of several individuals in a house surrounded by other officers—[shot] and kill[ed] an armed occupant of the house without first giving a warning." *See*, *id*. at 74.

Similarly, in *Surratt v. McClarin*, 851 F.3d 389 (5th Cir. 2017), this Court considered whether, in a Fourth Amendment excessive force case, "officers acted objectively unreasonably when they applied force to the jaw and throat of a suspect who was believed to be hiding evidence in her mouth." *See*, *id*. at 390. In *Vann v. City of Southaven*, 884 F.3d 307 (5th Cir. 2018), the issue was whether, in a Fourth Amendment excessive force case, police officers were entitled to qualified immunity when they shot and killed someone "during a small-scale drug sting operation." *See*, *id*. at 309. In *Shemwell v. Cannon*, 352 F. Supp. 3d 690 (N.D. Tex. 2019), the court was considering a Rule 12(b)(6) motion to dismiss for failure to state a claim based on the defense of qualified

immunity where a police officer made a warrantless arrest that the plaintiff claimed violated his Fourth Amendment rights. *See, id.* at 700-701.

In *Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019), this Court held that a police officer was entitled to qualified immunity because his attempt to terminate a dangerous high-speed chase that threatened the lives of innocent bystanders did not violate the Fourth Amendment, even when it placed the fleeing motorist at risk of serious injury or death. *See, id.* at 872-74. *Gutierrez v. Cobos*, 841 F.3d 895 (10th Cir. 2016) was another Fourth Amendment excessive force case involving claims that a police officer acted unconstitutionally when he, among other things, repeatedly hit and tased a motorist who ran a stop sign. *See, id.* at 898-99. *Chuttoo v. Horton*, 627 F. Supp. 3d 655 (E.D. Tex. 2022) primarily involved Fourth Amendment claims against two police officers for using excessive force during a traffic stop when they tased a motorist. *See, id.* at 663. In *Berry v. Tex. Woman's Univ.*, 528 F. Supp. 3d 579 (E.D. Tex. 2021), the issue was whether an employee's race-based discrimination claims could be brought under both § 1983 and Title VII or whether the former was preempted by the latter. *See, id.* at 599-600. *Oliver v. Klein Indep. Sch. Dist.*, 448 F. Supp. 3d 673 (S.D. Tex. 2020) did involve the First Amendment, but the central issue there was whether a school district could compel a student pledge allegiance to the flag of the United States. *Oliver*, 448 F. Supp. 3d at 679-80.

In this case, there are no allegations of unreasonable searches or seizures or excessive force. No one is dead or seriously injured. And those Fourth Amendment cases that involve split second decisions about the use force, especially lethal force, are simply inapposite. Qualified immunity is a judicially created doctrine that protects government officials who are acting in the scope of their official duties only when the law is unclear. *See, Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law[]" (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)). It is established that a government official who censors speech critical of him is either "plainly incompetent" or "knowingly violat[ing] the law." *See, West Virginia St. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943); *New York Times Co.*, 376 U.S. at 270. And in his response, Lowry established genuine issues of material fact as to whether Aragon, Bell and Yancy were banning him from Facebook or chilling his speech. The district court had previously and correctly held that, to establish a First Amendment violation, doing so was enough. (*See*, ROA.363, 365-66 (citations and quotations omitted).) Accordingly, the Court should reverse the district court's refusal to reconsider its order granting summary judgment.

**b. The district court manifestly erred by dismissing Lowry's First Amendment claims because the issue about whether his rights were "clearly established" was resolved early on in the case consistent with Supreme Court and Fifth Circuit precedent.**

The doctrine of qualified immunity (in particular, whether a right is "clearly established") should be decided at the earlier possible stage in litigation, before the opening of general discovery, typically at the motion-to-dismiss stage. *See, Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also, Carswell v. Camp*, 54 F.4th 307, 311-14 (2022). That is what happened in this case. The defendant had numerous opportunities to raise the qualified immunity defense at the motion-to-dismiss stage. Everyone, including the district court, touched on the "clearly established" prong of the defense, albeit obliquely. In denying the defendants' Rule 12(c) motion, the district court implicitly recognized that Lowry had "assert[ed] facts that, if true, would overcome [the] defense [of qualified immunity]." *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 481 (5th Cir. 2021). And in his response to the defendants' motions for summary judgment, Lowry buttressed those factual assertions with evidence that created a genuine issue of material fact. The defense, therefore, does not apply. If that is not a fair reading of what happened, binding Fifth Circuit precedent and the First Amendment have been effectively carted off the stage, which cannot be right. Accordingly, the Court should reverse the district court's refusal to reconsider its order granting summary judgment.

**c. The district court manifestly erred by dismissing Lowry's First Amendment claims because its prior order determining that, to establish a First Amendment violation, it was enough for Lowry to show that he had temporarily banned from Facebook or that his speech "has been curtailed[]" because of defendants' conduct, including protests, Aragon's comments regarding police protection for those making "anti-city administration" remarks, threats of arrest, etc. is the law of the case.**

Early on in the case, the district court determined that, to establish a First Amendment violation, it was enough for Lowry to show that he was temporarily banned from Facebook or that his speech "has been curtailed[]" because of defendants' conduct, including protests, Aragon's comments regarding protection for those making "anti-city administration" remarks, threats of arrest, etc. (*See*, ROA.363, 365-66 (citations and quotations omitted).) That was the law of the case.

"[T]he doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (internal citations and quotations omitted). "This rule of practice promotes finality and efficiency of the judicial process by protecting against litigation of settled issues." *Id.* at 816. The doctrine applies regardless of whether the case is transferred from one judge to a different judge or from state court to federal. *See, Hebert v. FMC Techs., Inc.*, No. 4:20-cv-02059, 2022 U.S. Dist. LEXIS 221858, at *3, *6-*8 (S.D. Tex. Sep. 28, 2022) (declining to revisit a different judge's decision after the case was

– 25 –

reassigned); *Barret v. Baylor*, 457 F.2d 119, 124 (7th Cir. 1972) (rulings of state courts are binding on federal courts under law of the case); *see also*, Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. Pa. L. Rev. 595, 684 n.336 (1987).

In fact, "the policies supporting the doctrine apply with even greater force to" transferred[5] cases because a judge "that feel[s] entirely free" to revisit prior decisions "threaten[s] to send litigants into a *vicious circle of litigation*." *Christianson*, 486 U.S. at 816 (internal citations and quotations omitted) (emphasis added); *Magnetic Emg'g Mfg. v. Dings Mfg.*, 178 F.2d 866, 868 (2d Cir. 1950) (L. Hand, J.) ("[W]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has already been done."); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (explaining that "traditional principles of law of the case counsel against" reevaluating prior rulings) (citing *In re Cragar Indus.*, 706 F.2d 503, 505 (5th Cir. 1983); *Roofing Sheet Metal Serv. v. La Quinta Motor Inns*, 689 F.2d 982, 986-87 (11th Cir. 1982); *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 168-69 (3d Cir. 1982); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.13[6] (2d ed. 1982); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3846 at 359 (1986)). A prior order

---

[5] See *supra* note 3.

of a different judge "may be reconsidered [only] when the governing law has been changed by the subsequent decision of a higher court, when new evidence becomes available, when clear error has been committed or to prevent manifest injustice." *Chrysler Credit Corp.*, 928 F.2d at 1509 (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).

In this case, the issue of whether the rights Lowry claimed were violated was impliedly resolved when the district court denied the defendants' Rule 12(c) motion to dismiss. *See also*, *Rosenberger*, 515 U.S. at 829-30 (explaining that it clearly established that an official or another acting under the color of state law cannot censor or restrict speech, or punish a speaker, based on the viewpoint expressed, regardless of the forum); *R.A.V.* v. *St. Paul,* 505 U. S. 377, 391-92 (1992) (same); *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985). Indeed, this Court has held, on the facts of this case, that a First Amendment violation occurs. *See, Robinson v. Hunt Cnty.*, 921 F.3d 440, 445-48 (5th Cir. 2019) ("[I]t is immaterial whether the Facebook page is analyzed as a limited or designated public forum. The First Amendment 'forbid[s] the State to exercise viewpoint discrimination' in either setting, 'even when the limited public forum is one of its own creation.'" (citations omitted)); *see also*, *id.* (reversing dismissal of First Amendment claim where a person's Facebook comments criticizing the sheriff's office were deleted and where the person was temporarily banned). Accordingly,

– 27 –

the Court should reverse the district court's refusal to reconsider its order granting summary judgment.

### d. Requiring a litigant to affirmatively negate a defense appears to conflict with Supreme Court precedent.

The district court also held that it was Lowry's job to conclusively negate the defendants' qualified immunity defense. Citing Professor Wigmore, Justice Marshall has explained that doing so is usually inappropriate. *See*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 286 (1973) (Marshall, J.) ("[C]ourts have traditionally been reluctant to require a party to prove negatives … ."). Accordingly, the Court should reverse the district court's refusal to reconsider its order granting summary judgment.

### e. Lowry did not waive his *Monell* claim.

The district court claimed that Lowry waived his *Monell* claim by failing to respond to La Marque's motion for summary judgment.

First, as a threshold matter, the suggestion that any court can enter summary judgment against a party because he did not respond to a motion for summary judgment conflicts with decades of Fifth Circuit precedent. *See*, *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule."); *John v. La. Bd. of Trustees for State Colleges & Universities*, 757 F.2d 698, 709 (5th Cir. 1985); *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362

n.3 (5th Cir. 1995); *see also, Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015).

Second, Lowry did address La Marque's mistaken claim that there was no *Monell* liability. Municipal liability can be found in any number of situations like where there is a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson*, 588 F.3d at 847 (citations and quotations omitted). It can also be found by showing a "a pattern of unconstitutional conduct … on the part of municipal actors or employees[.]" *Zarnow*, 614 F.3d at 169. In his affidavit, Lowry provided photographic evidence of a city employee removing close to twenty signs supporting his tax rollback initiative. (*See*, ROA.598-99.) He also provided names and addresses of about twenty other people whose First Amendment rights had been violated and text messages and screenshots from city officials confirming that they had done so and that they had not removed other political signs. (*See*, ROA.599-601.) Indeed, his affidavit together with other supporting evidence clearly establishes a widespread practice of First Amendment violations that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson*, 588 F.3d at 847. It could not be clearer. In fact, Lowry testified about unique knowledge regarding the constitutional violations that he acquired as a city official. (*See generally*, ROA.597-610.)

<u>Third</u>, the district court gratuitously said that, even if Lowry had not waived his *Monell* claim, the "[t]he uncontroverted summary judgment evidence—in the form of declarations from five city officials—conclusively establishes that La Marque did not have a pattern, policy, or custom of removing and censoring speech." (<u>ROA.966</u>.) That is simply untrue. Lowry, *who is also a city official*, provided evidence, sufficient to create a genuine issue of material fact, that La Marqe did have a "pattern, policy, or custom of removing and censoring speech." That evidence was painfully detailed in his own affidavit. (*See generally*, <u>ROA.597-610</u>.) What happened is that the district court did what it is forbidden to do on summary judgment: weigh the evidence. La Marque came forward with declarations from "city officials" disavowing any pattern, policy or practice of censoring speech. In response, Lowry came forward a declaration from a city official (himself) and a host of other evidence showing that there was a pattern, policy or practice of censoring speech, *including by blocking his own official, city-issued email address*. (*See generally*, <u>ROA.597-610</u>.) The district court cannot simply disregard the evidence he submitted simply because it finds the city's declarations more believable. That is a question resolved for the jury. Additionally, the district court's assessment of Lowry's *Monell* claim is fundamentally incompatible with this Court's decision in *Robinson*, <u>921 F.3d at 449-51</u>, and the district court's prior holding that a "claim under § 1983 may

– 30 –

be brought against government employees in their individual or official capacities or against a governmental entity." (ROA.357 (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) and *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).)

Accordingly, the Court should reverse the district court's refusal to reconsider its order granting summary judgment.

## CONCLUSION

The First Amendment is not some hollow promise that can be haphazardly disregarded unless a plaintiff negates the applicability of a judicially created doctrine that is increasingly (and impermissibly) being used as a license to disregard the Constitution and violate the rights it guarantees. Furthermore, the idea that a government official cannot censor speech is as old as the constitution itself. So to say that is not "clearly established" is manifest error and impossible to square with numerous binding precedent, including *Robinson*. Accordingly, the Court should reverse.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739


By:  s/ Curt Hesse
     Curt Hesse
     Tex. Bar No. 24065414
     curt@mooreandassociates.net

*Counsel for Appellant Joseph Lowry*

**CERTIFICATION REGARDING PRIVACY REDACTIONS**

As required by 5th Cir. R. 25.2.13 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that all required privacy redactions have been made.

s/ Curt Hesse
Curt Hesse

**CERTIFICATION REGARDING ELECTRONIC SUBMISSION**

As required by 5th Cir. R. 25.2.1 and the ECF Filing Standards for the United States Court of Appeals for the Fifth Circuit, I certify that the electronic submission of this document is an exact copy of the paper document and that it has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

s/ Curt Hesse
Curt Hesse

## CERTIFICATE OF SERVICE

As required by Fed. R. App. P. 25(b) and 5th Cir. R. 25.2.5, I certify that I served a copy of this document on all parties or their counsel of record—who are listed below—in accordance with Fed. R. App. P. 25(c) on the date indicated as follows:

Mr. Steven Selbe
sselbe@grsm.com
GORDON REES SCULLY MANSUKHANI LLP
TransWestern Tower
1900 West Loop South, Suite 1000
Houston, Texas 77027-3264
Facsimile: (713) 961-3938
*Counsel for Appellees*

☐ personal delivery
☐ mail
☐ third-party commercial carrier
☐ electronic means
☒ CM/ECF system

Date:    April 8, 2026                        s/ Curt Hesse
                                              Curt Hesse

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 28(a)(10), 32(g)(1) and 5th Cir. R. 32.3, I certify that this document complies with the:

1. type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☒ this document contains seven thousand three hundred ninety-six (7,396) words, or

   ☐ this brief uses a monospaced typeface and contains [*state the number of*] [(#,###)] lines of text.

2. typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Old Style Standard font (12-point Century Old Style Standard font for footnotes in accordance with 5th Cir. R. 32.1), or

   ☐ this brief has been prepared in a monospaced typeface using Microsoft Word 365 with [*state the number of*] [(##)] characters per inch in [*name of type style*] font.

s/ Curt Hesse<br>
Curt Hesse